Christopher SILVA, Petitioner/Cross–Respondent

v.

The PEOPLE of the State of Colorado, Respondent/Cross–Petitioner.

No. 05SC519.

Supreme Court of Colorado, En Banc.

April 23, 2007.

Christopher Silva, Limon, Colorado, Pro Se.

John W. Suthers, Attorney General, Laurie A. Booras, First Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Respondent/Cross–Petitioner.

Douglas K. Wilson, Colorado State Public Defender, Kathleen A. Lord, Chief Appellate Deputy Public Defender, Shann Jeffrey, Deputy State Public Defender, Denver, Colorado, Attorneys for Amicus Curiae Colorado State Public Defender.

Kim Dvorchak, Littleton, Colorado, Michelle Lazar, Jonathan D. Reppucci, Denver, Colorado, Attorneys for Amicus Curiae Colorado Criminal Defense Bar.

Justice RICE delivered the opinion of the court.

We granted certiorari to review the court of appeals' holding that the petitioner, Christopher Silva, may have had justifiable excuse for filing his second Crim. P. 35(c) motion outside the statutory time limit set in section 16–5–402(1), C.R.S. (2006).[1] In its ruling, the court of appeals held that the trial court should have investigated whether Silva's motion was justifiably late because the appeal on his first Crim. P. 35(c) motion was not finalized until after the three-year statutory time limit. The court held that only one claim in Silva's motion, the conflict of interest claim concerning post-conviction counsel, required further investigation. The court further held, however, that a related ineffective assistance of post-conviction counsel claim did not require further investigation by the trial court because there is not a right to effective assistance of post-conviction counsel. We affirm the court of appeals' decision in part and reverse in part. We hold that there exists a limited statutory right to post-conviction counsel in Colorado and that, where the right exists, counsel must meet the two-prong test of effectiveness as developed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## I. Facts and Procedural History

Christopher Silva was arrested and charged with four counts of burglary and assault plus six habitual criminal counts. Initially, he was represented by David Eisner, a deputy state public defender. However, Silva requested alternative defense counsel because of a possible conflict of interest with the public defender's office. Because of this potential conflict, the trial court appointed alternative defense counsel, Rennard Hailey, to represent Silva. After a jury trial, Silva was convicted of third-degree assault and first-degree burglary. The trial court then found Silva guilty of six habitual criminal counts under sections 18–4–202.1, C.R.S. (1997) and 16–13–101, C.R.S. (1997).[2] As a

---

1. We cite to the most recent version of the Colorado Revised Statutes where appropriate.

2. These sections have been repealed and re-enacted in section 18–1.3–804, C.R.S. (2006) and section 18–1.3–801, C.R.S. (2006), respectively.

result of these combined convictions, the trial court sentenced Silva to 48 years in the Department of Corrections. The court of appeals reviewed the trial court's actions and found that there was insufficient evidence for one of the habitual counts, but otherwise affirmed Silva's convictions.

Silva then filed his first Crim. P. 35(c) motion for post-conviction relief on the grounds of ineffective assistance of counsel. In this pro se motion, Silva requested that counsel be appointed to represent him in the post-conviction process. He specifically requested that neither trial counsel nor the public defender's office be appointed because his ineffective assistance of counsel claims involved both Hailey, his trial counsel, and Eisner, his initial public defender. As to Hailey's performance, Silva alleged a general lack of preparation and a series of evidentiary mistakes made during the trial. As to Eisner, Silva claimed that Eisner gave purported attorney-client material to the district attorney which later was used against Silva at trial.

The trial court issued an order appointing the public defender's office to represent Silva in the post-conviction process. However, the trial court later vacated this order at the request of the public defender's office and instead simply referred the matter to the public defender's office for its own determination under section 21–1–104(1)(b), C.R.S. (2006). The public defender's office evaluated Silva's motion and determined that his claims warranted representation. As a result, William McNulty of the public defender's office entered his appearance on behalf of Silva.

In the Crim. P. 35(c) proceeding, McNulty only presented the issue of constitutional ineffective assistance of trial counsel to the court and did not raise any of the other issues from Silva's pro se 35(c) motion, including the ineffective assistance claim concerning Eisner. Silva wrote separately to the judge and asked that all the issues in his original pro se 35(c) motion be preserved. However, at Silva's 35(c) hearing, the trial court refused to consider the ineffective assistance claim concerning Eisner because it had not been raised by McNulty. The court

stated that appointed counsel controls what issues are valid and are to be raised for consideration, not the defendant. After the hearing, the court denied Silva's request for relief under Crim. P. 35(c) because Silva's trial counsel was not constitutionally ineffective. The court of appeals affirmed the trial court's ruling.

Silva then filed a second Crim. P. 35(c) motion pro se alleging several claims: (1) ineffective assistance of appellate counsel; (2) unconstitutionality of habitual criminal statute because the judge and not the jury found Silva to be a habitual criminal; (3) failure to receive a "Curtis" advisement on his right to testify during the habitual criminal proceedings; (4) unconstitutionally disproportionate sentence; and (5) ineffective assistance of post-conviction counsel for failing to call certain witnesses and for having a conflict of interest. The conflict of interest issue in claim (5) stemmed from an allegation by Silva that McNulty failed to bring an ineffective assistance of counsel claim against Eisner, because Eisner was McNulty's supervisor.

The trial court denied Silva's second Crim. P. 35(c) motion without making any findings of fact or conclusions of law in its ruling. The court checked a box for "deny" and wrote "for the reasons given by the People in their Response." The People's Response argued that Silva's motion was time-barred because it was filed outside of the three-year time limit under section 16–5–402(1). By statute, Silva had to file all Crim. P. 35(c) motions by November 20, 2003, because the mandate on his direct appeal was issued on November 20, 2000. § 16–5–402(1). However, Silva's second Crim. P. 35(c) motion was not filed until December 22, 2003, a month outside the three-year statutory limit.

On appeal from the trial court's dismissal of his second 35(c) motion, Silva argued that the trial court should have held a hearing as to whether his second motion was late because of justifiable excuse or excusable neglect. Under section 16–5–402(2)(d), a late Crim. P. 35(c) motion may still be considered if a defendant can establish justifiable excuse or excusable neglect. In arguing justifiable excuse, Silva alleged that his second Crim. P.

35(c) motion was filed late because the order from the court of appeals on his first Crim. P. 35(c) proceeding was not issued until December 9, 2003. Only after this order could he file a Crim. P. 35(c) motion alleging ineffective assistance of post-conviction counsel. *Ardolino v. People*, 69 P.3d 73, 77 (Colo.2003) ("defendants have regularly been discouraged from attempting to litigate their counsels' effectiveness on direct appeal"); *People v. Thomas*, 867 P.2d 880, 886 (Colo.1994) ("this court has expressed a preference for having ineffective assistance of counsel claims brought in Crim. P. 35(c) proceedings"). Therefore, according to Silva, all of his claims in the second Crim. P. 35(c) motion were justifiably late because of the time it took to exhaust his appeal on the first Crim. P. 35(c) motion.

The court of appeals agreed in part with Silva and held that Silva's fifth claim concerning post-conviction counsel (ineffective assistance of post-conviction counsel for failing to call certain witnesses and for having a conflict of interest) may have been justifiably late due to the appeal of the first post-conviction motion. *People v. Silva*, 131 P.3d 1082, 1086 (Colo.App.2005). Therefore, the trial court should have held further proceedings on justifiable excuse and made separate findings of fact and law. *Id.* However, the court of appeals also held that the first four claims in Silva's second Crim. P. 35(c) motion (ineffective assistance of appellate counsel; unconstitutionality of habitual criminal statute because the judge and not the jury found Silva to be a habitual criminal; failure to receive a "Curtis" advisement on his right to testify during the habitual criminal proceedings; unconstitutionally disproportionate sentence) were time-barred. *Id.* at 1085.

In its decision, the court of appeals separated Silva's fifth claim into two claims, a claim for constitutionally ineffective assistance of counsel for failing to call certain witnesses and a claim for conflict of interest concerning the public defender's office. The court held that further proceedings were not needed on the ineffective assistance of counsel claim. The court reasoned that even if Silva's post-conviction counsel was ineffective, there was no constitutional or statutory violation requiring relief under Crim. P. 35(c)(2)(I) because there is no constitutional or statutory right to post-conviction counsel. *Silva*, 131 P.3d at 1088. However, the court of appeals held that Silva's conflict of interest claim required further proceedings and remanded the case back to the trial court as to that claim alone.

We granted certiorari in this case to address the right to post-conviction counsel and the standard for evaluating such counsel.[3] We hold that while there is no constitutional right to counsel in post-conviction proceedings, there exists a limited statutory right to post-conviction counsel in Colorado if a defendant's Crim. P. 35(c) motion has arguable merit. Furthermore, in order to give meaning to this limited statutory right, post-conviction counsel must provide effective assistance of counsel as measured by the *Strickland* standard. 466 U.S. at 687, 104 S.Ct. 2052.

## II. Analysis

As to Silva's first issue, we reiterate that there is no constitutional right to post-conviction counsel under either the United States Constitution or the Colorado Constitution. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Brinklow v. Riveland*, 773 P.2d 517, 521

---

3. Specifically, we granted certiorari on the following issues:
(1) Whether Petitioner has a constitutional right to assistance of counsel in pursuit of post-conviction relief, and thus effective assistance of counsel under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Art. II, section 25 of the Colorado Constitution;
(2) Whether the Colorado Court of Appeals erred in not reaching the merits of Petitioner's other claims raised in his appeal of the denial of his application for post-conviction relief under Crim. P. Rule 35(c) and not remanding those claims to the trial court to issue findings of fact and conclusions of law in accordance with Crim. P. 35(c)(3)(IV); and
(3) Whether a due process violation can arise from the simple appointment of post-conviction counsel with a conflict of interest that the trial court "should have known about."

(Colo.1989); *People v. Breaman,* 939 P.2d 1348, 1350 (Colo.1997). However in *Breaman,* we left open the question of whether there is a statutory right to post-conviction counsel. Today, we hold that there exists a limited statutory right to post-conviction counsel for meritorious Crim. P. 35(c) motions.

■ A limited statutory right to counsel in post-conviction proceedings has been recognized by the court of appeals since 1988. *People v. Duran,* 757 P.2d 1096, 1097 (Colo. App.1988); *People v. Hickey,* 914 P.2d 377, 379 (Colo.App.1995). As explained in *Hickey,* "[the] statutory right to counsel is tenuously premised on an interpretation of the statutes creating and governing the office of the state public defender and requiring that office to prosecute post-conviction remedies which have arguable merit." 914 P.2d at 379 (internal citations omitted). Specifically, the *Duran* court relied on section 21–1–103, C.R.S (1986 Repl.Vol. 8B) and section 21–1–104(1)(b), C.R.S (1986 Repl.Vol. 8B). 757 P.2d at 1097. Section 21–1–104(1)(b) provided that a state public defender shall "[p]rosecute any appeals or other remedies before or after conviction that the state public defender considers to be in the interest of justice." *Id.* The court read "other remedies" to include meritorious Crim. P. 35(c) motions. *Id.*

■ The interpretation that a limited statutory right to post-conviction counsel arises out of sections 21–1–103 and 21–1–104 has been around for almost two decades. During this time, the General Assembly has amended both of these statutes five times. *See* § 21–1–103, 1990 Colo. Sess. Laws 1038, 1038–39; § 21–1–103, 1992 Colo. Sess. Laws 2165, 2176; § 21–1–104, 1994 Colo. Sess. Laws 1473, 1475; § 21–1–103, 2000 Colo. Sess. Laws 1479, 1480; § 21–1–103, 2004 Colo. Sess. Laws 725, 725–726. However, the General Assembly never amended the statutes to counter the court of appeals' interpretation in *Duran* and *Hickey.* "Under an established rule of statutory construction, the legislature is presumed, by virtue of its action in amending a previously construed statute without changing the portion that was construed, to have accepted and ratified the prior judicial construction." *People v. Swain,* 959 P.2d 426, 430–31 (Colo.1998). Therefore, it appears that the General Assembly has ratified the existence of a limited statutory right to post-conviction counsel arising from sections 21–1–103 and 21–1–104.

■ However, this statutory right to post-conviction counsel is not automatic or unlimited. A district court is not required to appoint counsel for all Crim. P. 35(c) motions "when the asserted claim is wholly unfounded." *Duran v. Price,* 868 P.2d 375, 379 (Colo.1994). Thus, the statutory right is limited to cases where a Crim. P. 35(c) petition is not wholly unfounded as judged by the trial court.

In addition, the statutory right is also limited if the state public defender's office finds the Crim. P. 35(c) motion without merit. *Breaman,* 939 P.2d at 1351 n. 2; *see also People v. Starkweather,* No. 05CZ110, 159 P.3d 665, 667, 2006 WL 1914262, at *2 (Colo. App.2006). "If the court does not deny the [Crim. P. 35(c)] motion . . . the court shall cause a complete copy of said motion to be served on the Public Defender . . . [who] shall respond as to whether the Public Defender's Office intends to enter on behalf of the defendant." Crim. P. 35(c)(3)(V). In addition, under section 21–1–104(2), the public defender is not required to pursue any remedies unless he is "satisfied first that there is arguable merit to the proceeding." Therefore, the court and the state public defender's office must find that a defendant's Crim. P. 35(c) motion has arguable merit before the statutory right to post-conviction counsel is triggered.[4]

### III.  Standard for Evaluating Post-conviction Counsel

■ Having determined that there exists a limited statutory right to post-conviction counsel in Colorado, the next question is what standard of performance should be applied to such counsel. The court of appeals

---

**4.** The defendant must also still meet the indigency requirements in section 21–1–103(3), C.R.S. (2006).

below held that a defendant "bears the risk ... for all attorney errors made in the course of representation." *Silva*, 131 P.3d at 1090 (*quoting Coleman v. Thompson*, 501 U.S. 722, 748, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). However, we disagree and adopt the *Strickland* standard for evaluating the effectiveness of post-conviction counsel.

■ *Strickland v. Washington* created a two-prong test for ineffective assistance of counsel claims which places the burden on the defendant to show (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." 466 U.S. at 687, 104 S.Ct. 2052. The *Strickland* test has been adopted explicitly by this court not only for trial counsel but also for appellate counsel. *People v. Valdez*, 789 P.2d 406 (Colo.1990). In *Valdez*, this court held that the purpose of the *Strickland* test was to ensure "that at all critical stages of the adjudicative process a criminal defendant represented by counsel is in fact represented by an attorney of sufficient quality to ensure that the process itself is fundamentally fair." 789 P.2d at 410. Therefore, the test was "well-suited for appellate as well as trial settings." *Id.* We have also indicated in dicta that the test may be equally well-suited to evaluate post-conviction counsel. *Breaman*, 939 P.2d at 1351. Furthermore, several other states have also adopted the *Strickland* standard to ensure that their state post-conviction process is fundamentally fair for indigent defendants. *See Schertz v. State*, 380 N.W.2d 404 (Iowa 1985); *Menzies v. Galetka*, 150 P.3d 480 (Utah 2006); *Commonwealth v. Priovolos*, 552 Pa. 364, 715 A.2d 420 (1998); *Iovieno v. Comm'r of Corr.*, 242 Conn. 689, 699 A.2d 1003 (1997).

In its decision below, the court of appeals specifically rejected the *Strickland* standard for post-conviction counsel because the remedy under *Strickland* requires another post-conviction proceeding. The court feared that this would lead to "the spectre of post-conviction proceedings ad infinitum." *Silva*, 131 P.3d at 1088 (internal citations omitted). As a result, the court adopted an agency theory which placed the risk of any poor performance by post-conviction counsel on the defendant.[5] *Id.*

■ An agency theory, however, places no requirements on post-conviction counsel to provide even a modicum of effective assistance. As the United States Supreme Court stated, "a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all." *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). For that reason, post-conviction counsel must at least be minimally effective in order to give any meaning to the limited statutory right to post-conviction counsel discussed above. The *Strickland* two-pronged test has well-developed case law to aid in evaluating the minimal effectiveness of counsel. Because of this case law, *Strickland* can be easily applied to post-conviction counsel as well.

Furthermore, the adoption of the *Strickland* test does not lead to infinite post-conviction proceedings. Under Crim. P. 35(c)(3)(IV), the court is only required to hold further proceedings if the defendant's Crim. P. 35(c) motion has merit. The court can still deny a defendant's subsequent Crim. P. 35(c) motion without further briefing or a hearing if the defendant fails to show that he or she is entitled to relief under 35(c). Therefore, we hold that the *Strickland* test is the appropriate measure for ineffective assistance of post-conviction counsel claims.

## IV. Conflict of Interest

■ The court of appeals held that Silva was entitled to further proceedings to

---

**5.** The court of appeals derived its agency theory from *Coleman v. Thompson*, 501 U.S. 722, 754, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In *Coleman*, the issue facing the United States Supreme Court was whether a defendant could claim constitutionally ineffective assistance of counsel for failure by counsel to file a timely post-conviction petition. *Id.* The Court held that because there was no constitutional right to post-conviction counsel, untimeliness by post-conviction counsel "cannot be constitutionally ineffective; therefore Coleman must 'bear the risk of attorney error.'" *Id.* at 753, 111 S.Ct. 2546. In this case, the court of appeals held that since Silva had no constitutional right to post-conviction counsel, any errors allegedly made by post-conviction counsel must similarly be endured by Silva because they were made by his agent, McNulty. *Silva*, 131 P.3d at 1088.

determine whether his conflict of interest claim in the second Crim. P. 35(c) motion was late because of justifiable excuse. *Silva*, 131 P.3d at 1090–91. We affirm the court of appeals' holding as to the conflict of interest claim. We hold that Silva's conflict of interest claim is a subset of his ineffective assistance of counsel claim. Ineffective assistance of counsel can occur through "representation that falls below the level of competence to be expected of a reasonably competent attorney practicing criminal law ... [and] representation that is intrinsically improper due to a conflict of interest." *People v. Castro*, 657 P.2d 932, 943 (Colo.1983) (internal citations omitted). Therefore, just as with the ineffective assistance of counsel claim discussed above, the trial court should make findings of fact and conclusions of law on whether Silva's conflict of interest claim was justifiably excused from the late filing of his second Crim. P. 35(c) motion.

## V. Conclusion

Therefore, we reverse in part and affirm in part the court of appeals' decision that remanded only Silva's conflict of interest claim for further proceedings on justifiable excuse. We remand both Silva's ineffective assistance of post-conviction counsel claim and conflict of interest claim for further proceedings consistent with this opinion.

Justice COATS dissents.

Justice EID does not participate.

Justice COATS, dissenting.

The majority concedes that criminal defendants have no constitutional right to counsel in post-conviction proceedings, but it finds a statutory right, at least for indigent defendants, to the assistance of constitutionally effective counsel in those proceedings. Because I not only disagree with the majority's statutory interpretation but also consider it substantially more problematic than does the majority, I briefly register my dissent.

Unlike the majority, I believe section 21–1–104(1)(b) C.R.S. (2006), which falls within a section entitled, "Duties of public defender," authorizes the public defender to represent indigent defendants under specified circumstances but creates no right of representation that does not already exist. The authorization is expressly couched in terms of the state public defender's own assessment of the interests of justice and, at most, gives the public defender the discretion to act on behalf of indigent defendants in certain situations in which they lack any right to the assistance of counsel. I take issue with the majority's interpretation apparently limiting the exercise of this discretion to claims that are objectively meritorious, as judged by the trial court, and by its conclusion that the extension of such discretion to the public defender actually creates a statutory right of representation in the defendant.

Even if the possibility of assistance from the public defender could be described in some way as a statutory right to counsel, I find it extremely problematic to expand that "right" into a guaranty of constitutionally effective assistance. Although the majority looks for support from *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), the Supreme Court has more recently, and directly, said that "where there is no constitutional right to counsel there can be no deprivation of effective assistance." *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (paraphrasing *Wainwright v. Torna*, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982)). It also seems clear that ineffectiveness or incompetence of counsel during a state post-conviction proceeding is not a cognizable claim in federal post-conviction proceedings. *See* 28 U.S.C. § 2254(i)(2006). Whether a statutory duty has been fulfilled is more appropriately determined by considering the nature and scope of the duty contemplated by the statute creating it. *See, e.g., People v. Davis*, 156 Ill.2d 149, 189 Ill.Dec. 49, 619 N.E.2d 750, 757 (1993) (state statutory right to appointment of counsel for indigent defendants in post-conviction proceedings contemplates only that appointed counsel will ascertain the bases of the post-conviction petitioner's complaints, shape those complaints into appropriate legal form, and present them to the court).

Finally, I do not consider the effect of the majority's holding to be so straightforward.

It is unclear to me whether the majority's rationale contemplates a right to constitutionally effective assistance only for indigent defendants, or if it would extend the same right to non-indigent defendants who hire their own counsel for post-conviction proceedings, even without a corresponding statutory right to counsel. Moreover, I do not consider the specter of post-conviction proceedings ad infinitum as insignificant or burdenless as the majority suggests.

Unless the motion, files, and record of the case clearly establish that the alleged acts or omissions of counsel were either immaterial or were reasonable strategic choices or otherwise within the range of reasonably effective assistance, the defendant is entitled to a hearing to prove his allegations. *See Ardolino v. People,* 69 P.3d 73, 77–78 (Colo.2003). And with the majority's opinion today, it appears that a challenge to the effectiveness of a defendant's post-conviction counsel, taken with reasonable expedition following an unsuccessful appeal of the trial court's denial, will virtually always justify an extension of time limitations, regardless of the number of post-conviction motions previously advanced by the defendant.

Because I do not believe the defendant had any statutory right to counsel during post-conviction proceedings, I do not believe even an actual conflict of interest with the public defender would be a cognizable claim. I therefore respectfully dissent.