**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Dennis Michael SISSON, Defendant–Appellant.**

**No. 06CA0489.**

Colorado Court of Appeals, Div. II.

June 14, 2007.

As Modified on Denial of Rehearing Sept. 6, 2007.

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Dennis Michael Sisson, Pro Se.

Opinion by Judge CASEBOLT.

Defendant, Dennis Michael Sisson, appeals the order denying his Crim. P. 35(a) motion for postconviction relief. He contends that he has a liberty interest in a reduced prison sentence; that the court improperly denied him due process when it modified his sentence without providing (1) notice of a violation of a condition of that sentence, (2) disclosure of the evidence against him, (3) a fair opportunity to be heard and to present evidence, and (4) the right to confront and cross-examine adverse witnesses; and that, thus, the court improperly imposed a new sentence in an illegal manner. Because we agree, we reverse and remand.

In 1994, defendant pleaded guilty to sexual assault on a child by one in a position of trust, a class three felony, and an associated crime of violence count. Under the terms of the plea agreement, sentencing was left open to the court within the statutory range of ten to thirty-two years in the custody of the Department of Corrections (DOC). The trial court sentenced defendant to twenty-five years in the DOC, with ten years of that term suspended on the condition that he complete successfully the DOC's sex offender treatment program while incarcerated.

In 2001, defendant filed a motion in which he alleged that he had completed Phase I of the DOC's sex offender treatment program and was entitled to the ten-year sentence suspension. In response to the People's assertion that defendant would not successfully complete sex offender treatment until he progressed through Phase II, defendant argued that Phase II was a "non-completion" program. The People acknowledged that an offender could only "complete" the program by progressing to the "maintenance stage," and asked the court to find that "successful completion of sex offender treatment" required defendant to complete the first three levels of Phase II and to be placed on "maintenance level" status.

On October 9, 2001, the court issued an order noting the People's assertion and finding that defendant was not entitled to the modification of his sentence "for the reasons set forth in the People's response." Defendant did not appeal that order.

In August 2005, the trial court received a letter from a DOC sex offender treatment program manager, stating that defendant had not successfully completed the program, but would benefit from further treatment. No motion was pending at the time. On September 1, 2005, the court issued, sua sponte, an order vacating the ten-year suspension and imposing a twenty-five-year sentence.

On December 10, 2005, defendant filed a Crim. P. 35(a) motion, seeking to correct an illegal sentence. He argued that this revised sentence was illegal because it was not possible to "complete" the sex offender treatment program in the DOC, and that his due process rights were violated when the court "modified" his sentence without holding a hearing. The court denied the motion, finding that it was successive.

On appeal, defendant contends that the court improperly denied him due process. We agree that the court's modification of his sentence was imposed in an illegal manner and cannot stand.

I.

As an initial matter, we reject the People's argument that the appeal must be dismissed because defendant failed to file a timely notice of appeal. This court's records indicate the notice was filed on March 10, 2006, and was mailed from the DOC's internal mailing system on March 9, 2006, within the requisite forty-five days, and we may therefore review the trial court's January 23, 2006, order. *See* C.A.R. 4(b)(1), (e).

We also reject the People's contention that defendant is untimely attempting to appeal the trial court's order of September 1, 2005. Defendant's Crim. P. 35 motion is an appropriate way to challenge the trial court's order. *See People v. Boykin,* 631 P.2d 1149 (Colo.App.1981)(a defendant may either appeal an order revoking a deferred sentence pursuant to C.A.R. 1, or file a motion for postconviction review pursuant to Crim. P. 35(c) ).

## II.

■ Under Crim. P. 35(a), the court may correct a sentence imposed in an illegal manner within 120 days from the date the sentence is imposed. Defendant asserts that, because he filed his motion within 120 days of the court's "modification" of his sentence, he may seek relief under the rule. Whether defendant is entitled to proceed under Crim. P. 35(a) and obtain relief depends in part upon whether the court imposed a sentence in its September 1 order. We conclude that it did.

Here, defendant initially received a twenty-five-year sentence to the DOC with ten years suspended upon condition that he successfully complete sex offender treatment. The court's order changed that sentence by eliminating the suspended portion of it. The amended mittimus states that "the defendant [is] resentenced ... [to] Department of Corrections 25.00 years." In essence, the court required defendant to serve a full twenty-five years with no possibility of reduction for successfully completing the condition of sex offender treatment. The court's action, in our view, constituted an imposition of a sentence within the meaning of Crim. P. 35(a).

## III.

Defendant contends that the court imposed the sentence in an illegal manner because it did not provide him procedural due process. We agree.

■ Ordinarily, a defendant with a suspended sentence has an expectation that the incarceration component of the sentence will not be imposed except for violation of the conditions attached to it. See People v. Scura, 72 P.3d 431, 434 (Colo.App.2003). Thus, an originally suspended sentence may be executed only after certain procedural protections have been provided and the court finds that a condition of the suspended sentence has been violated. People v. Scura, supra, 72 P.3d at 435. Such procedural protections include (1) written notice of the claimed violations; (2) disclosure to the defendant of evidence against him or her; (3) a fair opportunity to be heard in person and to present witnesses and documentary evidence; (4) the

right to confront and cross-examine adverse witnesses, unless there is good cause to deny such a right; (5) a neutral and detached hearing officer or judge; and (6) a written statement by the fact finder as to the evidence relied on and reasons for the revocation. People v. Scura, supra, 72 P.3d at 435.

Here, the situation is more complex. Whereas in Scura the defendant had not been imprisoned at all before his suspended sentence was executed, and thus he had a liberty interest that was clearly entitled to due process protection, defendant here has been incarcerated since 1994 and does not have the same type of interest. Moreover, defendant's original sentence did not have conditions attached to it that, if violated, would trigger incarceration. Instead, the condition was that if defendant successfully completed sex offender treatment, ten years of his sentence would be suspended. There was no time limit specified within which defendant must complete the treatment. Hence, the condition was more akin to an incentive rather than a condition that, if violated, would trigger imprisonment.

■ The Constitution does not itself afford a prisoner a liberty interest in a reduced sentence. Thus, a convicted person has no federal constitutional or inherent right to be conditionally released before the expiration of a valid sentence. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979). However, a state may create a liberty interest in a reduced sentence. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)(Court recognized that Nebraska could create a liberty interest in good time credits by statutory enactment).

■ To determine whether an inmate retains a certain liberty interest, a court must look to the nature of the claimed interest and decide whether the Due Process Clause applies. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972). An inmate holds a protectible right in those interests to which he or she has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, supra, 442 U.S.

at 7, 99 S.Ct. at 2103–04. Essentially, if there is no subjective appraisal involved, such as a discretionary determination, but, instead, there are facts that, if shown, mandate a decision favorable to the individual inmate, a liberty interest will exist. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex, supra,* 442 U.S. at 10, 99 S.Ct. at 2105.

In *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989), the Supreme Court noted that the most common manner in which a state creates a liberty interest is by establishing substantive predicates to govern official decision-making and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met. Thus, a liberty interest arises only where a statute or regulation uses "explicitly mandatory language" that instructs the decision-maker to reach a specific result.

In *Gaston v. Taylor,* 946 F.2d 340, 343 (4th Cir.1991), the court determined that if a prisoner's term of imprisonment can be shortened or modified by rights conveyed to him under state law, those rights cannot be denied without due process, and that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement."

Thus, "a State creates a protected liberty interest by placing substantive limitations on official discretion. An inmate must show 'that particularized standards or criteria guide the State's decision-makers.'" *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) (quoting *Conn. Bd. of Pardons v. Dumschat,* 452 U.S. 458, 467, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981)(Brennan, J., concurring)).

Liberty interests can be created by state court decisions. *See Conti v. Dyer,* 593 F.Supp. 696 (N.D.Cal.1984). In *Kentucky Department of Corrections v. Thompson, supra,* where regulations promulgated pursuant to a consent decree were at issue, the Court noted, but did not resolve, the question of "whether a consent decree can create a liberty interest protected by the Fourteenth Amendment." *Kentucky Department of Corrections v. Thompson, supra,* 490 U.S. at 465 n. 5, 109 S.Ct. at 1911. The *Thompson* Court did not address the question because it found the regulations to be discretionary in nature. Where, however, a consent decree requires a particular result, it can indeed create a liberty interest. *See Rodi v. Ventetuolo,* 941 F.2d 22, 28 (1st Cir.1991); *Fitts v. Witkowski,* 920 F.Supp. 679 (D.S.C.1996)(consent decree created a liberty interest because it was explicitly mandatory and dictated specific substantive predicates; mandatory-discretionary test still applicable even following *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), in which the Court held that liberty interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life).

■ Here, we conclude that the trial court created a liberty interest in a potentially reduced sentence in defendant's favor because, in mandatory language, it granted a suspension of ten years from defendant's twenty-five-year sentence upon defendant's successful completion of sex offender treatment. While the trial court had discretion in determining the original sentence to impose upon defendant (and a discretionary decision rarely, if ever, can create a liberty interest), the court exercised that discretion in a way as to create a legitimate claim of entitlement to a ten-year suspension when and if defendant could demonstrate successful completion of sex offender treatment.

Defendant's claim to that reduction was not taken away by the original sentence to confinement; rather, it was specifically granted therein. Indeed, the sentence itself contains explicitly mandatory language that requires suspension of ten years of the twenty-five-year sentence if and when that specific criterion is met. Accordingly, we conclude defendant was entitled to due process protections before the trial court modified his sentence.

■ Here, the trial court did not give defendant written notice of the claimed violations or provide an opportunity to be heard in person or to present witnesses and docu-

198

mentary evidence. Consequently, it also did not give defendant the right to confront and cross-examine any witnesses. And although defendant asked the therapist to send a letter to the court, he was unaware of the therapist's opinion that he still had not successfully completed the treatment because he did not receive a copy of the letter until after the court's decision. Thus, disclosure to defendant of some of the evidence against him was not made before the ruling entered. Hence, we conclude the modified sentence was imposed in an illegal manner, and the trial court therefore erred in denying defendant's Crim. P. 35(a) motion.

We also reject the trial court's conclusion that defendant's claim is successive. Defendant had not previously raised the claim that the court had imposed this modified sentence in an illegal manner. *See People v. Billips*, 652 P.2d 1060, 1063 (Colo.1982) (in determining whether there are successive postconviction motions, the issue is whether a defendant's claim has been fully and finally litigated in a previous postconviction proceeding).

On remand, if the trial court determines to modify the sentence, it should also address whether a modification of defendant's sentence would have the effect of improperly increasing his sentence after he had begun serving it. *See Righi v. People*, 145 Colo. 457, 359 P.2d 656 (1961); *People v. Sandoval*, 974 P.2d 1012 (Colo.App.1998)(trial court is prohibited from increasing a legal sentence once it has been imposed and the defendant has begun serving it). The court should also appoint counsel to represent defendant. *See Silva v. People*, 156 P.3d 1164 (Colo.2007).

The order is reversed, and the case is remanded with directions to provide defendant with the due process rights of notice, disclosure, a fair opportunity to be heard and to present evidence, and to confront adverse witnesses as discussed in this opinion, and for further proceedings as necessary.

Judge ROTHENBERG and Judge ROMÁN concur.