22CA1704 Peo v Vreeland 10-16-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1704
Douglas County District Court No. 04CR706
Honorable Patricia D. Herron, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Delmart Vreeland,

Defendant-Appellant.

ORDER AFFIRMED

Division VI
Opinion by JUDGE SULLIVAN
Welling and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 16, 2025

Philip J. Weiser, Attorney General, Patrick A. Withers, Assistant Solicitor General and Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Brownstone P.A., George Thomas, Winter Park, Florida, for Defendant-Appellant

¶ 1    Defendant, Delmart Vreeland, appeals the postconviction court's order denying his most recent motion for postconviction relief. We affirm.

## I.    Background

¶ 2    In 2004, Vreeland sexually assaulted two teenage boys after promising to pay them in exchange for letting Vreeland photograph them in their underwear. Vreeland also provided both boys with cocaine and alcohol.

¶ 3    In 2006, a jury convicted Vreeland of two counts of inducement of child prostitution, two counts of soliciting for child prostitution, four counts of sexual exploitation of children, two counts of sexual assault, two counts of contributing to the delinquency of a minor, and one count of distribution of a controlled substance. Vreeland appealed his convictions and a division of this court affirmed. *People v. Vreeland*, (Colo. App. No. 08CA2468, Feb. 14, 2013) (not published pursuant to C.A.R. 35(f)) (*Vreeland I*).

¶ 4    In 2017, Vreeland filed his first postconviction petition, which the postconviction court denied. Vreeland appealed the denial and a division of this court affirmed. *People v. Vreeland*, (Colo. App. No.

1

17CA1648, Aug. 27, 2020) (not published pursuant to C.A.R. 35(e)) (*Vreeland II*).

¶ 5     In 2021, Vreeland filed a second postconviction petition under Crim. P. 35(a) and 35(c), raising thirty-five separate claims. In a detailed order, the postconviction court denied the petition without a hearing. This most recent denial prompted this appeal.

¶ 6     We group Vreeland's contentions in this appeal as follows: (1) the trial court lacked jurisdiction over his case; (2) the postconviction court erred by denying most of his postconviction claims as either successive or time barred; (3) his attorneys in the postconviction phase provided ineffective assistance of counsel; (4) the postconviction court erred by denying his challenge to his illegal sentence; and (5) courts on direct appeal and in the postconviction phase have violated his right to due process by enforcing word limits in briefs.

## II.     Standard of Review and Applicable Law

¶ 7     We review de novo a district court's denial of a defendant's postconviction motion without a hearing. *See People v. Joslin*, 2018 COA 24, ¶ 5. To warrant a hearing on a Crim. P. 35(c) motion, a defendant must allege facts that, if true, entitle the defendant to

postconviction relief. *Id.* at ¶ 4. A district court may deny a defendant's postconviction motion under Crim. P. 35(c) without an evidentiary hearing only where the motion, files, and record in the case clearly establish that the allegations presented in the motion are without merit and don't warrant postconviction relief. *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003).

¶ 8 Postconviction proceedings are designed to prevent injustices after a defendant's conviction and sentencing, not to provide a perpetual right of review. *People v. Hampton*, 528 P.2d 1311, 1312 (Colo. 1974). As a result, a postconviction court must deny any claim that the defendant presented and the court resolved in a previous appeal or postconviction proceeding. Crim. P. 35(c)(3)(VI). But there are exceptions. As relevant here, this bar on successive claims doesn't apply to claims "based on evidence that could not have been discovered previously through the exercise of due diligence." Crim. P. 35(c)(3)(VI)(a).

¶ 9 A postconviction court must also deny any claim that the defendant *could* have presented in a previous appeal or postconviction proceeding, except, as relevant in this case, any claim based on evidence that couldn't have been discovered

3

previously through the exercise of due diligence; any claim over which the sentencing court lacked subject matter jurisdiction; and any claim where an objective factor, external to the defense and not attributable to the defendant, made raising the claim impracticable. *See* Crim. P. 35(c)(3)(VII)(b), (d), (e).

¶ 10    In addition, a court may correct a sentence imposed without jurisdiction or not authorized by law "at any time."  Crim. P. 35(a).

### III.    Jurisdiction

¶ 11    We first address two of Vreeland's claims that he characterizes as "jurisdictional."  *See* Crim. P. 35(c)(2)(III), (c)(3)(VII)(d).  Vreeland contends that (1) the trial's venue in Douglas County, Colorado, was improper; and (2) defects in the charging information deprived the trial court of jurisdiction.

### A.    Venue

¶ 12    In general, a criminal action must be tried in the county where the offense was committed.  § 18-1-202(1), C.R.S. 2025.

¶ 13    Before trial, Vreeland challenged whether Douglas County was the proper venue for his trial.  Although the trial court rejected his challenge, he didn't raise any venue argument in his direct appeal. We therefore can't address the merits of his venue argument at this

postconviction stage. *See* Crim. P. 35(c)(3)(VII). Contrary to Vreeland's argument, venue isn't a jurisdictional issue that can be raised at any time. *See People v. Joseph*, 920 P.2d 850, 851-52 (Colo. App. 1995).

¶ 14    Vreeland nonetheless asserts that he couldn't raise venue in his direct appeal because the relevant trial court records were "hidden" from him. But even if that were true, Vreeland's venue argument fails for a different reason — it came too late. Absent a showing of good cause, a defendant waives any challenge to venue by failing to raise it in writing within twenty-one days of their arraignment. § 18-1-202(11). Here, Vreeland was arraigned on July 6, 2005. But he didn't raise his venue challenge until seven months later. Nor does he advance any good cause to excuse his delay.

¶ 15    Accordingly, the postconviction court didn't err by denying Vreeland's venue challenge.

### B.    Sufficiency of the Charging Information

¶ 16    Vreeland argues that the trial court lacked jurisdiction because the charging information (1) didn't contain sufficient information regarding the time and location of his alleged offenses;

(2) failed to allege the required mental state for inducement of child prostitution (counts one and two) and soliciting for child prostitution (counts three and four); and (3) didn't include victim information for two of the counts alleging sexual exploitation of children (counts seven and eight).

¶ 17    In a criminal case, a trial court's jurisdiction is invoked by the filing of a legally sufficient complaint, information, or indictment. *People v. Sims*, 2019 COA 66, ¶ 15.  A charging document is legally sufficient if it identifies the essential elements of the crime charged in the language of the statute.  *Id.* at ¶ 16.

¶ 18    We conclude that the charging information in this case was legally sufficient, thus providing the trial court with jurisdiction. For each count, the information identified the essential elements of the charged offense by generally tracking the language of the relevant statute.

¶ 19    True, the information didn't allege the specific time that Vreeland committed each alleged offense.  But the time of their commission wasn't an essential element.  *See People v. James*, 40 P.3d 36, 48 (Colo. App. 2001), *overruled in part on other grounds by, McDonald v. People*, 2021 CO 64.  Moreover, the information *did*

6

identify a date range for each alleged offense, thus giving Vreeland a fair and adequate opportunity to prepare his defense. *See People v. Madden*, 111 P.3d 452, 456 (Colo. 2005).

¶ 20    The same is true regarding the place where Vreeland's offenses allegedly occurred. The county where an offense is alleged to have occurred generally doesn't constitute an element of the offense. § 18-1-202(11). But even if it did, the information alleged that each of Vreeland's offenses was "committed, or triable," in Douglas County.

¶ 21    We also reject Vreeland's argument that the information failed to allege the required mental state for counts one through four. The information alleged in counts one through four that Vreeland acted "feloniously." At trial, the court instructed the jury that the prosecution had to prove beyond a reasonable doubt that Vreeland acted "knowingly" when committing counts one through four. The word "feloniously" in a charging document is equivalent to "knowingly." *People v. Trujillo*, 731 P.2d 649, 651 (Colo. 1986). Thus, the information adequately alleged the required mental state that the prosecution had to prove at trial.

¶ 22     Nor are we persuaded that the prosecution's failure to identify the specific child victims in counts seven and eight deprived the trial court of jurisdiction over the sexual exploitation of children charges. In counts seven and eight, the prosecution alleged that Vreeland knowingly prepared, arranged for, published, produced, promoted, made, sold, financed, offered, exhibited, advertised, dealt in, or distributed "sexually exploitative material." § 18-6-403(3)(b), C.R.S. 2004. Under the applicable version of the statute, "sexually exploitative material" means "any photograph, motion picture, videotape, print, negative, slide, or other mechanically, electronically, chemically, or digitally reproduced visual material that depicts a child engaged in, participating in, observing, or being used for explicit sexual conduct." § 18-6-403(2)(j), C.R.S. 2004. Thus, although the statute required the prosecution to prove that the visual material depicted actual children, nothing demanded "evidence of [the] child[ren]'s identification." *People v. Brown*, 313 P.3d 608, 613 (Colo. App. 2011).

¶ 23     Accordingly, the postconviction court didn't err by rejecting Vreeland's claims that he characterizes as jurisdictional.

## IV. Successive Claims

¶ 24 The postconviction court determined that the bulk of Vreeland's remaining claims were procedurally barred. The People defend the court's conclusion under Crim. P. 35(c)(3)(VII), arguing that Vreeland could have presented twenty-nine of his thirty-five claims in a previous appeal or postconviction proceeding. Vreeland disagrees, contending that (1) his claims rely on new evidence; (2) an objective factor, external to the defense, made raising the claims earlier impracticable; (3) his claims haven't been "fully and finally" resolved in a prior judicial proceeding; and (4) certain of his claims asserted that the court imposed an illegal sentence, which the court can correct at any time under Crim. P. 35(a).

### A. Newly Discovered Evidence

¶ 25 Vreeland says the following, among other things, constitute new evidence favorable to him: (1) thousands of minutes of recorded telephone calls between himself and his counsel, revealing both his counsel's misconduct and the government's violation of his right to confidentiality with counsel; (2) a videotaped interview of a witness supporting his assertion that no sexual contact occurred in the home; and (3) evidence that government investigators violated a

9

sequestration order and withheld exculpatory material by speaking to witnesses during trial and failing to disclose that an investigator was seen with a witness.

¶ 26    We conclude Vreeland's asserted new evidence didn't push his claims within Crim. P. 35(c)(3)(VII)(b)'s safe harbor for newly discovered evidence. As to the recorded phone calls and interview tape, Vreeland acknowledged in his petition that both were available either before or during trial.[1] The postconviction court similarly concluded that recorded calls were available to Vreeland before trial. Thus, the recorded calls and interview tape didn't constitute

---

[1] Vreeland's postconviction counsel partially backtracked in a supplement to the petition, saying that some of the recorded calls (those recorded while Vreeland was temporarily jailed in Iowa) were sealed and inaccessible before trial. But counsel acknowledged receiving even those recordings more than a year before the postconviction court denied Vreeland's petition. The postconviction court explained that, despite having the recordings for that period, Vreeland failed to provide "a scintilla of support" for his claim. On appeal, too, Vreeland fails to point us to any specific recording in the record that supports his claims. Like the division in *People v. Vreeland*, ¶ 31 n.2 (Colo. App. No. 17CA1648, Aug. 27, 2020) (not published pursuant to C.A.R. 35(e)) (*Vreeland II*), we decline to scour the record to determine if any of the thousands of recorded calls support Vreeland's claims. *See also People v. Gutierrez-Vite*, 2014 COA 159, ¶ 28 ("We will not play archaeologist with the record.").

new evidence that "could not have been discovered previously." Crim. P. 35(c)(3)(VII)(b).

¶ 27    In addition, the division in *Vreeland II* previously addressed Vreeland's contention that the recorded calls established his attorneys' blameworthiness, rendering this portion of his claim successive under Crim. P. 35(c)(3)(VI).  *See Vreeland II*, ¶¶ 30-32.

¶ 28    Turning to the government's alleged violation of a sequestration order and withholding of exculpatory evidence, Vreeland didn't allege sufficient facts to show that he couldn't have discovered these alleged violations earlier through the exercise of due diligence.  Crim. P. 35(c)(3)(VII)(b).  Moreover, in resolving Vreeland's first postconviction motion, the postconviction court rejected Vreeland's allegations that a government investigator had inappropriate relationships with witnesses in this case, again rendering this portion of his claim successive under Crim. P. 35(c)(3)(VI).

¶ 29    Vreeland's remaining allegations of new evidence are undeveloped.  In his opening brief, Vreeland mentions briefly that a camera allegedly fell out of the chain of custody, that a victim allegedly lied about his grandfather's suicide, and that the mother

of one of the victims allegedly would have provided "impeachment evidence." He also asserts that unspecified "new evidence" supported claims one through ten and twenty-nine in his petition. But Vreeland doesn't develop these arguments, much less explain why such evidence couldn't have been discovered earlier through the exercise of due diligence. We therefore decline to address Vreeland's conclusory arguments. *See People v. Romero*, 2015 COA 7, ¶ 53 (declining to address a Crim. P. 35(c) argument that the defendant presented in a perfunctory and conclusory manner).

## B.    Objective Factor External to the Defense

¶ 30    We similarly conclude that Vreeland's "objective factor" argument under Crim. P. 35(c)(3)(VII)(e) is undeveloped. Without citing supporting case law, Vreeland devotes just two sentences in his opening brief to this argument. Thus, we decline to address it. *See Romero*, ¶ 53.

## C.    Fully and Finally Adjudicated Claims

¶ 31    Relying on *People v. Diaz*, 985 P.2d 83, 85 (Colo. App. 1999), Vreeland argues that the postconviction court should have addressed the merits of his claims that a prior court hadn't yet "fully and finally" resolved. But *Diaz* predates the supreme court's

12

2004 adoption of Crim. P. 35(c)(3)(VII).  *See* Rule Change 2004(02), Colorado Rules of Criminal Procedure (Amended and Adopted by the Court En Banc, Jan. 29, 2004), https://perma.cc/3TUK-PLAX. As discussed above, the current rule bars not only claims that the defendant *actually* raised in a prior appeal or postconviction proceeding but also claims that the defendant *could* have raised. *See People v. Taylor,* 2018 COA 175, ¶¶ 13-20 (discussing the 2004 adoption of Crim. P. 35(c)(3)(VII) and rejecting the defendant's reliance on pre-2004 case law construing the prior version of the rule).

¶ 32    Accordingly, because the *Diaz* division applied a version of Crim. P. 35 that is no longer in effect, Vreeland's reliance on its analysis is misplaced.

### D.    Illegal Sentence Claims

¶ 33    Sentences that are inconsistent with the statutory scheme outlined by the General Assembly are illegal and may be corrected at any time.  Crim. P. 35(a); *People v. Jenkins,* 2013 COA 76, ¶ 11. By contrast, Crim. P. 35(c)(3) authorizes postconviction challenges to the "judgment of conviction" itself.  Constitutional challenges to a defendant's conviction or sentence are also governed by

Crim. P. 35(c). *People v. Collier*, 151 P.3d 668, 670 (Colo. App. 2006). The substance of the postconviction motion controls whether it falls under Crim. P. 35(a) or 35(c), not the label placed on it. *See id.*

¶ 34    With the exception of Vreeland's claim involving count nine, which we discuss below, we agree with the People that none of Vreeland's postconviction claims constitutes an illegal sentence claim under Crim. P. 35(a). While Vreeland attempts to characterize several of his claims as illegal sentence claims — including his challenges to the constitutionality of his convictions and sentence, the sufficiency of the evidence and charging information underlying the habitual criminal charges, and the evidence admitted at the habitual criminal hearing — those claims don't allege that Vreeland's sentence is inconsistent with the General Assembly's statutory scheme. Instead, the claims, at most, allege that these errors *led* to a sentence that is inconsistent with the statutory scheme. The same can be said of all postconviction claims. As a result, these claims don't fall under Crim. P. 35(a) and aren't exempt from the bar on successive postconviction claims.

V.     Ineffective Assistance of Postconviction Counsel

¶ 35     Vreeland next contends that the postconviction court erred by denying his claim that the private attorney who represented him in his first postconviction appeal (first postconviction counsel) provided ineffective assistance of counsel.  Vreeland also argues that, to the extent we reject his contention that new evidence requires reversal of the postconviction court's summary denial of his second postconviction petition, the attorney who represented him on his second postconviction petition (second postconviction counsel) provided ineffective assistance of counsel.

A.     Applicable Law and Standard of Review

¶ 36     A criminal defendant has a constitutional right to the effective assistance of counsel in their defense.  *People v. Rainey*, 2023 CO 14, ¶ 1.  But this constitutional right doesn't apply during the postconviction phase.  *Silva v. People*, 156 P.3d 1164, 1167 (Colo. 2007).  Instead, a criminal defendant in Colorado has a limited statutory right to counsel in postconviction proceedings.  *Id.* at 1168.

¶ 37     Like an ineffective assistance of trial counsel claim, to prevail on an ineffective assistance of postconviction counsel claim, the

15

defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced their defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Silva*, 156 P.3d at 1169 (*Strickland* applies to ineffective assistance of postconviction counsel claims). Prejudice in this context means that the defendant has shown a reasonable probability that, but for postconviction counsel's unprofessional errors, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A defendant must establish both prongs under *Strickland* to succeed on their ineffective assistance of postconviction counsel claim. *People v. Garcia*, 815 P.2d 937, 941 (Colo. 1991).

¶ 38    Ineffective assistance of postconviction counsel claims present a mixed question of law and fact. *People v. Corson*, 2016 CO 33, ¶ 25. We review the postconviction court's legal conclusions de novo but defer to the court's factual findings if they are supported by the record. *Id.*

### B.    Analysis

¶ 39    At the outset, we address two threshold issues.

¶ 40    First, Vreeland understandably didn't challenge the effectiveness of his second postconviction counsel below. *See*

*People v. Kelling*, 151 P.3d 650, 657 (Colo. App. 2006) (defense counsel "could not be expected to litigate his own ineffectiveness"). Because that particular claim of ineffective assistance of postconviction counsel hasn't yet been presented to the postconviction court, we will not consider it in the first instance. *See People v. Cali*, 2020 CO 20, ¶¶ 33-36.

¶ 41 Second, the People argue that the limited statutory right to postconviction counsel in Colorado doesn't guarantee those defendants who retain *private* postconviction counsel the corresponding right to effective assistance of counsel under *Strickland*. *Cf. Silva*, 156 P.3d at 1171 (Coats, J., dissenting) ("It is unclear to me whether the majority's rationale contemplates a right to constitutionally effective assistance only for indigent defendants, or if it would extend the same right to non-indigent defendants who hire their own counsel for post-conviction proceedings, even without a corresponding statutory right to counsel."). We need not decide whether Vreeland was entitled to effective assistance from his first postconviction counsel because, even if he was, Vreeland's claim of ineffectiveness fails on its merits.

¶ 42 Turning to those merits, Vreeland argues that his first postconviction counsel provided ineffective assistance by advising him that counsel couldn't complete the opening brief a mere seven days before it was due, forcing Vreeland to complete the brief on his own. According to Vreeland, counsel then advised this court that he would prepare a reply brief to "cure any defects" in the opening brief but then failed to do so, requiring Vreeland to find a new lawyer to complete the reply brief. The *Vreeland II* division ultimately rejected Vreeland's contentions of error.

¶ 43 Even if we assume that first postconviction counsel's performance was deficient, Vreeland hasn't shown prejudice. To prove prejudice, Vreeland needed to show a reasonable probability that, but for his private counsel's failure to file a merits brief, he would have prevailed on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). But Vreeland's second petition for postconviction relief didn't identify any potential appellate issues that his first postconviction counsel should have raised in lieu of, or in addition to, the issues that Vreeland raised on his own. Nor did he explain how such issues were stronger or had a better chance of prevailing

than the issues he was able to raise.[2] *See People v. Trujillo*, 169

P.3d 235, 238-39 (Colo. App. 2007). In the absence of such

allegations, the postconviction court didn't err by denying

Vreeland's ineffective assistance of counsel claim without a hearing.

*See id.*; *see also People v. Villanueva*, 2016 COA 70, ¶ 68 (A

"conclusory allegation is insufficient to establish prejudice under

*Strickland.*").

¶ 44    Accordingly, the postconviction court didn't err by rejecting

Vreeland's ineffective assistance of counsel claim.

## VI.    Vreeland's Sentence

¶ 45    Vreeland next contends that the postconviction court erred by

denying his challenge to his illegal sentence. His argument is two-

fold: (1) the sentence on one of his sexual assault convictions (count

nine) should have run consecutively to the sentences on his other

convictions under section 18-1.3-1004(5)(a), C.R.S. 2025;[3] and

---

[2] Vreeland suggests that "prejudice can be presumed," but he devotes only one sentence of his opening brief to this argument and cites no supporting case law. We decline to address this undeveloped contention. *See People v. Romero,* 2015 COA 7, ¶ 53.
[3] Vreeland acknowledges in his opening brief that his argument on this issue may result in a longer sentence, explaining that "[e]ven if a longer sentence results, it does not change the fact that [he] is suffering from an illegal sentence."

(2) the trial court failed to exercise judicial discretion when it declined to impose concurrent sentences on the subset of convictions related to each of the two victims, with the two "batches" of sentences running consecutively.

## A.    Additional Background

¶ 46    In October 2008, the trial court sentenced Vreeland to an indeterminate sentence of twenty-four years to life on count nine under the Colorado Sex Offender Lifetime Supervision Act of 1998 (SOLSA), §§ 18-1.3-1001 to -1012, C.R.S. 2025, and to an aggregate 336-year sentence on the other counts.  The court's indeterminate sentence on count nine ran concurrently with the sentences on the other counts.  The 336-year sentence included 48 years each on counts one through six and count ten, all running consecutively to one another.  Vreeland's determinate sentences on the remaining counts ran concurrently to the 336-year sentence.

¶ 47    In June 2025, while this appeal was pending in our court, the postconviction court purported to alter Vreeland's sentence on count nine so that it ran consecutively, rather than concurrently, to his related conviction on count eight for sexual exploitation of children.  The court said it was entering its amended sentence

"pursuant to" section 18-1.3-1004(5)(a).  The court also characterized its amended sentence as a "clerical" correction of the mittimus under Crim. P. 36.

## B.    Count Nine

¶ 48    We first address whether the postconviction court possessed jurisdiction in June 2025 to amend Vreeland's sentence on count nine while his appeal was pending in this court.  *See People v. S.X.G.*, 2012 CO 5, ¶ 9 (appellate court may raise jurisdictional defects sua sponte).  We conclude that it didn't.  After a party has perfected an appeal of a final judgment, the trial court lacks jurisdiction to entertain any motion for an order affecting the judgment.  *People v. Dist. Ct.*, 638 P.2d 65, 66 (Colo. 1981); *see also Molitor v. Anderson*, 795 P.2d 266, 269 (Colo. 1990) ("[T]he filing of a notice of appeal divests a trial court of authority to consider matters of substance affecting directly the judgment appealed from.").  A defendant's sentence is part of the judgment of conviction.  Crim. P. 32(b)(3).

¶ 49    In this appeal, Vreeland challenged multiple aspects of his sentence, including whether the sentence on count nine should run concurrently with or consecutively to his sentences on the other

21

counts. Given the scope of his challenge, Vreeland's notice of appeal, filed well before the postconviction court's June 2025 order, divested the court of jurisdiction to consider matters directly affecting his sentence. *See Molitor*, 795 P.2d at 269. As a result, the portion of the June 2025 order amending Vreeland's sentence on count nine is void. *See People v. Jones*, 631 P.2d 1132, 1133 (Colo. 1981).

¶ 50 The postconviction court's characterization of the amendment as a "clerical" correction under Crim. P. 36 doesn't change our conclusion. Crim. P. 36 doesn't allow a trial court to amend a sentence itself; rather, the rule permits the court to make "perfunctory changes" so that the judgment conforms to the sentence actually imposed. *People v. Wood*, 2019 CO 7, ¶ 39 (quoting *People v. Emeson*, 500 P.2d 368, 369 (Colo. 1972)).

¶ 51 Here, the trial court's original sentence on count nine ran concurrently with Vreeland's sentences on the other counts. Attempting to alter the sentence on count nine so that it now runs consecutively to the other sentences doesn't constitute a mere perfunctory change, so Crim. P. 36 doesn't apply. *See id.*

¶ 52    As to the merits of Vreeland's sentencing contentions, the People agree with Vreeland's first sentencing argument in part. They assert that section 18-1.3-1004(5)(a) required the trial court to impose a sentence on count nine that ran consecutively to Vreeland's related conviction on count eight for sexual exploitation of children, reasoning that those two offenses arose from the same incident.  The People disagree, however, that Vreeland's indeterminate sentence on count nine must run consecutively to his remaining sentences.

¶ 53    A sentencing court ordinarily has discretion to impose either concurrent or consecutive sentences when the defendant is convicted of multiple offenses.  *Juhl v. People*, 172 P.3d 896, 899 (Colo. 2007).  But under section 18-1.3-1004(5)(a), which has remained unchanged since Vreeland's offenses, the trial court must impose consecutive sentences in SOLSA cases involving multiple convictions arising from the "same incident" if the court imposes an indeterminate prison sentence for the sex offense.

¶ 54    We decline to disturb the trial court's sentence on count nine. Vreeland doesn't point us to any portions of the record establishing that his conduct underlying count nine and the remaining counts

23

occurred as part of a single incident. *See* C.A.R. 28(a)(7)(B) (appellant's opening brief must contain "citations to the authorities and parts of the record on which the appellant relies").

¶ 55 While the People come closer on the narrower question of whether Vreeland's conduct underlying counts eight and nine occurred as part of a single incident, their supporting record citations also don't show an illegal sentence. Instead of pointing us to evidence introduced at trial, the People rely on the prosecution's closing argument, the charging information, pretrial pleadings, and statements supporting law enforcement's request for an arrest warrant. Absent "affirmative evidence" showing otherwise, we presume that the trial court didn't err when imposing sentence. *LePage v. People*, 2014 CO 13, ¶ 15; *cf. Juhl*, 172 P.3d at 900 (explaining, in the identical-evidence context, that the "mere possibility" that identical evidence may support two convictions isn't sufficient to remove the trial court's sentencing discretion; the evidence must support "no other reasonable inference than that the convictions were based on identical evidence").

¶ 56 Accordingly, we discern no basis for disturbing the trial court's original sentence on count nine.

## C. Judicial Discretion at Sentencing

¶ 57 Vreeland's contention that the trial court failed to exercise appropriate discretion at sentencing to impose concurrent sentences on all convictions corresponding to a single victim constitutes an illegal manner claim under Crim. P. 35(a). *See People v. Swainson*, 674 P.2d 984, 986 (Colo. App. 1983), *rev'd on other grounds*, 713 P.2d 479, 480 (Colo. 1986).

¶ 58 An illegal manner claim must be filed "within the time provided [in Crim. P. 35(b)] for the reduction of sentence." Crim. P. 35(a). Where, as here, the defendant filed a direct appeal of the judgment, they must file their illegal manner claim "within 126 days (18 weeks) after entry of any order or judgment of the appellate court denying review or having the effect of upholding a judgment of conviction or sentence." Crim. P. 35(b)(3).

¶ 59 The division in *Vreeland I* issued its mandate affirming Vreeland's convictions on January 28, 2014. But Vreeland didn't file his illegal manner claim until March 4, 2021, more than seven years later. Accordingly, Vreeland's illegal manner claim is untimely.

## VII. Word Limitations

¶ 60 Finally, Vreeland contends that his right to due process has been violated because courts on direct appeal and during the postconviction phase have enforced word limits in briefs (including in this appeal), requiring that he abandon certain arguments.

¶ 61 To the extent Vreeland challenges word limits imposed in either *Vreeland I* or *Vreeland II*, those claims either were brought or could have been brought in those proceedings. *See Vreeland II*, ¶ 36. They are therefore barred as successive. Crim. P. 35(c)(3)(VI), (VII).

¶ 62 To the extent Vreeland challenges restrictions imposed by the postconviction court related to his most recent petition for postconviction relief, he fails to identify those restrictions with specificity, so we don't address them. *See Romero*, ¶ 53.

¶ 63 We also aren't convinced that Vreeland was denied a fair opportunity to present his contentions of error in this appeal. *See People v. Oglethorpe*, 87 P.3d 129, 133 (Colo. App. 2003) ("Procedural due process . . . requires notice and a fair opportunity to be heard."). Although this court denied Vreeland leave to file an oversized 12,708-word opening brief, he doesn't identify any specific

argument that he was forced to abandon as a result. *See* C.A.R. 28(g) (an opening brief is limited to 9,500 words).

¶ 64 Moreover, having reviewed Vreeland's briefs in detail, we conclude that certain portions could have been "editorially revised to a more concise form without any loss, and probably with significant gain, in impact." *People v. Galimanis*, 728 P.2d 761, 763 (Colo. App. 1986); *see also Watts v. Thompson*, 116 F.3d 220, 224 (7th Cir. 1997) (appellate court's enforcement of page limits is a "rather ordinary practice" and didn't amount to a due process violation).

¶ 65 Accordingly, we perceive no due process violation.

## VIII. Disposition

¶ 66 We affirm the order.

JUDGE WELLING and JUDGE GOMEZ concur.