24CA0713 Peo v Smith 12-04-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0713
Arapahoe County District Court No. 16CR2385
Honorable Darren L. Vahle, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ernest Daron Smith,

Defendant-Appellant.

ORDER AFFIRMED

Division A
Opinion by CHIEF JUDGE ROMÁN
Bernard* and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 4, 2025

Philip J. Weiser, Attorney General, Austin R. Johnston, Assistant Attorney
General, Denver, Colorado for Plaintiff-Appellee

Law Office of Gary Fielder, Gary D. Fielder, Denver, Colorado for Defendant-
Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Defendant, Ernest Daron Smith, appeals the postconviction court's order denying his Crim. P. 35(c) motion without a hearing. We affirm.

## I.    Background

¶ 2    A jury found Smith guilty of one count of attempted first degree murder and four counts of attempted second degree murder based on evidence that he fired several bullets near five victims in a motel parking lot. The judgment of conviction was affirmed by a division of this court. *See People v. Smith*, (Colo. App. No. 17CA2245, Oct. 19, 2020) (not published pursuant to C.A.R. 35(e)) (*Smith I*). The division summarized the facts of the crime as follows:

> Four of the victims — Stacey Pena and her three [teenage and young adult] daughters — had been residing at the motel with other family members. On the night of the incident, as the Penas pulled their van into the parking lot, a motel guest in room 143 accused them of damaging his car.
>
> During the ensuing argument, two or three men emerged from room 143 and one of them — later identified by the witnesses as Smith — shot several rounds at the victims' van. One of the bullets grazed the shirt of a security guard [Latrice Wray] who had intervened to try to de-escalate the argument.

> Police officers quickly arrived at the scene. On entering room 143, they found the accuser's girlfriend, Jennifer Elias, along with Smith, who was in bed with the blankets pulled up nearly over his head. A search of the room uncovered the gun used in the shooting hidden in a shoe.

*Smith I*, ¶¶ 3-5.

¶ 3    The central issue at trial was the identity of the shooter. Wray and all three Pena sisters identified Smith as the shooter on the night of the incident, and all three sisters identified him again in the courtroom. Dtonio Rutherford — a man who emerged from room 143 with Smith and testified at trial — implicated Smith on the night of the incident but not at trial. *Id.* at ¶ 22.

¶ 4    As relevant here, the division concluded that under the totality of the circumstances, the trial court had not abused its discretion by denying Smith's motion to continue his trial so that he could secure Elias's appearance as a witness. *Id.* at ¶ 18. It further concluded that Smith was not prejudiced by Elias's absence because (1) her alleged testimony was immaterial and largely introduced through other witnesses; and (2) the evidence against Smith was overwhelming. *Id.* at ¶¶ 19-23.

¶ 5     Represented by postconviction counsel, Smith filed a Crim. P. 35(c) motion alleging that his trial counsel had provided ineffective assistance. The postconviction court ordered a response from the People and denied the motion in a thorough order, generally concluding that Smith had failed to allege facts demonstrating prejudice. We agree.

## II.     Discussion

¶ 6     As best we understand the postconviction motion and opening brief, Smith asserts that he is entitled to a hearing on whether he received ineffective assistance of trial counsel based on claims that his counsel (1) lacked a coherent strategy of defense and generally failed to prepare for trial; (2) neglected to endorse an alternate suspect defense; (3) failed to request additional DNA evidence; and (4) failed to diligently pursue Elias so that she could testify at trial. Because Smith points to one key fact in support of the latter three claims — that Rutherford "was the only other person that could reasonably be the shooter" — we will address those three claims in tandem.

A. Standard of Review and Applicable Law

¶ 7 We review de novo the denial of a Crim. P. 35(c) motion without a hearing. *People v. Marquez*, 2020 COA 170M, ¶ 17. A district court may deny a Crim. P. 35(c) motion without an evidentiary hearing if the motion, files, and record of the case clearly show the defendant is not entitled to relief. Crim. P. 35(c)(3)(IV).

¶ 8 To adequately allege a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must (1) "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment" (the deficient performance prong), *id.* at 690; and (2) "assert facts that, if true, show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (the prejudice prong), *People v. Timoshchuk*, 2018 COA 153, ¶ 22. A postconviction court may deny an ineffective assistance claim without conducting a hearing when the supporting allegations are bare and conclusory; fail to establish either prong of the *Strickland* test, even if taken as true; or are directly refuted by the record. *People v. Duran*, 2015 COA 141, ¶ 9; *see* Crim. P.

4

35(c)(3)(IV); *see also People v. Segura*, 2024 CO 70, ¶ 7. However, when a defendant alleges sufficient facts that, if true, may warrant relief, the court must hold an evidentiary hearing. *People v. Chalchi-Sevilla*, 2019 COA 75, ¶ 7.

### B. Deficient Defense Strategy and Preparation for Trial

¶ 9     First, Smith broadly claimed that his trial counsel lacked a coherent strategy of defense and failed to prepare for trial. In support of the deficient performance prong of this claim, Smith alleged that his counsel did not investigate Wray and the Pena sisters because counsel erroneously believed that the witnesses would not appear for trial.

¶ 10     Smith did not, however, explain how counsel's alleged lack of preparation for these prosecution witnesses prejudiced his defense. He did not, for example, point to any deficiency in his trial counsel's cross-examinations. Rather, he made only the bare and conclusory allegation that counsel's lack of investigation resulted in an "inability to locate and serve Ms. Elias" — an "inexplicable" error sufficient to undermine confidence in Smith's verdict. Even accepting Smith's allegation of deficient performance on this claim to be true, we conclude that his *Strickland* prejudice allegation is

insufficient to merit a hearing. *See Duran,* ¶ 9. To the extent Smith's reference to Elias's testimony is more than bare and conclusory, we conclude that the reference pertains to a separate ineffective assistance claim — one that we address below.

### C.     Deficient Pursuit of Rutherford as an Alternate Suspect

¶ 11     Next, Smith claims that his counsel was ineffective for failing to pursue a defense that Rutherford was an "obvious" alternative suspect. He alleges that counsel's performance was deficient because counsel did not (1) endorse an alternate suspect defense; (2) seek to have Rutherford's DNA collected "for identification comparison"; or (3) diligently pursue Elias — who would testify that Rutherford left the motel room with a firearm and that she didn't see Smith return with it after the shooting.

¶ 12     Smith did not articulate any particular prejudice as to counsel's failure to endorse an alternate suspect defense or to collect and test Rutherford's DNA. As to prejudice from the lack of Elias's testimony, Smith alleged the following:

> Without Ms. Elias's testimony that Rutherford was the man in possession of the firearm when he left the motel room, and that when she observed Mr. Smith come back to the motel he neither possessed a firearm nor did he hide

6

anything in the room, the jury was left with the impression that Mr. Smith was the only one who touched that gun. Ms. Elias'[s] testimony would have been corroborated by the information dispatch relayed about the description of the suspect, as Mr. Rutherford was wearing a white T-shirt and dark pants.

¶ 13     Even assuming that Smith's allegations establish deficient performance, we once again conclude that his allegation of prejudice does not provide a basis for relief.

¶ 14     First, as recognized by the division on direct appeal, a police officer spoke to Elias on the night of the shooting. *See Smith I*, ¶ 20. At trial, the officer testified that after Smith was removed from room 143, Elias told him that "there wasn't a gun in the room." The officer also testified that nobody reported seeing Smith enter room 143 with a gun or seeing him hide the gun. We agree with the division that the officer's testimony is not significantly different from alleged testimony by Elias that "when she observed Mr. Smith come back to the motel he neither possessed a firearm nor did he hide anything in the room." And the evidence at trial clearly established that the gun used in the shooting was in the same room as Smith when he was arrested shortly after the crime.

¶ 15     Second, we, like the division on direct appeal and the postconviction court, perceive overwhelming record evidence of Smith's guilt. *See Smith I*, ¶ 22. In addition to the substantial eyewitness testimony that Smith was the shooter and Smith's proximity to the gun when arrested shortly after the shooting, all five eyewitnesses at trial told the police that Rutherford was *not* the shooter. This record clearly establishes that Smith is not entitled to relief. *See* Crim. P. 35(c)(3)(IV).

¶ 16     In light of the marginal value of Elias's testimony and the overwhelming evidence of Smith's guilt, we perceive no reasonable probability that if counsel had further pursued Rutherford as an alternate suspect, the result of Smith's proceeding would have been different. *See Timoshchuk*, ¶ 22. Accordingly, we conclude that Smith failed to sufficiently allege *Strickland*'s prejudice prong, and the postconviction court properly denied his motion without a hearing. *See Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003) (noting that sometimes, "the trial record reveals evidence of guilt so strong and so unlikely to have been adversely affected by counsel's alleged deficiencies that denial of an ineffective-assistance claim would be justified without an evidentiary hearing").

### III. Disposition

¶ 17    The order is affirmed.

JUDGE BERNARD and JUDGE TAUBMAN concur.