1
 2024 CO 70 The People of the State of Colorado, Petitioner: v. Francine Erica Segura. Respondent: No. 22SC816
Supreme Court of Colorado, En Banc
November 4, 2024

 Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 20CA1785

 Attorneys for Petitioner: Philip J. Weiser, Attorney General
Majid Yazdi, Senior Assistant Attorney General Denver,
 Colorado

 Attorney for Respondent: Erin Wigglesworth Denver, Colorado

 Attorneys for Amicus Curiae Office of Alternate Defense
 Counsel: The Noble Law Firm, LLC Antony Noble Lakewood,
 Colorado

 JUSTICE SAMOUR DELIVERED THE OPINION OF THE COURT, IN WHICH
 CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE HOOD,
 JUSTICE GABRIEL, JUSTICE HART, AND JUSTICE BERKENKOTTER
 JOINED.

 OPINION

 SAMOUR, JUSTICE

 ¶1
 When a rule "is as clear as a glass slipper and fits
 without strain, courts should not approve an interpretation
 that requires a shoehorn." Demko v. United
 States, 216 F.3d 1049, 1053 (Fed. Cir. 2000) (making the
 comment with respect to the interpretation of a statute).
Instead, in such a situation, our task is simply to apply the
 rule - i.e., "merely to put [the glass slipper] on the
 foot where it belongs." Lexington Ins. Co. v.
 Precision Drilling Co., 830 F.3d 1219, 1220 (10th Cir.
2016) (stating this in the context of statutory
 interpretation).

 ¶2
 Rule 35 of the Colorado Rules of Criminal Procedure provides
 postconviction remedies a defendant may seek.[1] As relevant here,
 section (c)(3) of the rule allows a defendant to "file a
 motion . . . to vacate, set aside, or correct the
 sentence" based "on one or more of the grounds
 enumerated in section (c)(2)." Crim. P. 35(c)(3). One of
 the grounds listed in section (c)(2) is the ineffective
 assistance of trial counsel. Crim. P. 35(c)(2).

 ¶3
 Paragraphs (I) through (IX) of section (c)(3) then delineate
 the procedures that must be followed in filing and resolving
 Crim. P. 35(c) motions. The procedures in paragraphs (IV) and
 (V) are at the hub of this opinion.

 ¶4
 Under paragraph (IV), if the court concludes that the motion,
 the record, and the file show that the defendant is not
 entitled to relief, it must deny the motion without
 forwarding a copy to the prosecution and the Office of the
 Public Defender ("OPD"). Crim. P. 35(c)(3)(IV). But
 if the court does not so conclude, then paragraph (V)
 requires the court to forward a copy of the motion to the
 prosecution and, if the motion requests the appointment of
 counsel, then also to the OPD. Crim. P. 35(c)(3)(V). The OPD
 must then file a response within forty-nine days indicating
 whether it has a conflict of interest and, if not, whether it
 intends to enter its appearance and whether it needs more
 time to investigate the defendant's claims. Id.
If the OPD enters its appearance, it must include in its
 response any additional claims that have arguable merit.
Id. After the motion (as supplemented by the OPD)
 has been fully briefed, an evidentiary hearing must be held
 unless the court finds it appropriate to dispose of the
 motion without a hearing. Id.

 ¶5
 In this case, the defendant, Francine Erica Segura, filed a
 pro se Crim. P. 35(c) motion raising multiple ineffective
 assistance of trial counsel claims and requesting the
 appointment of postconviction counsel. But the trial court
 followed neither of the paths outlined in paragraphs (IV) and
 (V). Instead, it took a middle-of-the-road approach: It
 denied all but one claim and then forwarded a copy of the
 motion to the prosecution and the OPD with instructions
 limiting the OPD's

 appointment to the lone surviving claim. Because the OPD had
 a conflict of interest, an attorney from the Office of
 Alternate Defense Counsel ("OADC") was appointed as
 postconviction counsel.[2] That attorney filed a supplement to the
 pro se motion with respect to the one claim within the
 limited scope of her representation. Following an evidentiary
 hearing on that claim, the court denied Segura's request
 for postconviction relief. A division of the court of appeals
 reversed the trial court's order in part, and we granted
 the prosecution's petition for writ of
 certiorari.[3]

 ¶6
The prosecution now asks us to read a hybrid path into Crim.
 P. 35(c)(3)(IV)-(V) -one which allows trial courts to (1)
 deny some (but not all) of the claims raised in a pro se
 motion requesting counsel without first forwarding a copy of
 it to the prosecution and the OPD, and then (2) appoint the
 OPD solely on any remaining claims. We decline to do so
 because the plain language of Crim.

 P. 35(c)(3)(IV)-(V) does not support such an interpretation.
Much like Cinderella's stepsisters couldn't wedge
 their feet into the glass slipper, the prosecution can't
 force this fit into Crim. P. 35(c)(3)(IV)-(V), no matter how
 hard it wiggles.

 ¶7
We hold that when, as here, a defendant files a pro se Crim.
 P. 35(c) motion that contains a request for counsel, the
 trial court has two, and only two, choices. First, it may
 conclude, based on its review of the motion, the record, and
 the file, that none of the claims has arguable
 merit, in which case it must deny the motion in its
 entirety without further action by entering written
 findings of fact and conclusions of law. Second, it may
 conclude, based on its review of the motion, the record, and
 the file, that at least one claim has arguable
 merit, in which case it must grant the request for
 postconviction counsel and forward a complete copy
 of the motion to the prosecution and the OPD. The OPD must
 then determine which claims (if any) lack arguable merit and
 should be abandoned, which arguably meritorious claims (if
 any) should be supplemented, and which new claims (if any)
 have arguable merit and should be added.

 ¶8
 Thus, upon its initial review of a postconviction motion like
 the one filed by Segura in this case, the court must either
 deny the motion and thus all of the claims, or not deny the
 motion and thus none of the claims-there is no betwixt and
 between option. And if the court denies none of the claims,
 it may not restrict the scope of postconviction counsel's
 representation.

 ¶9
 Because the division was spot-on in ruling that the trial
 court violated Crim. P. 35(c)(3)(IV)-(V), and because the
 prosecution does not challenge the division's conclusion
 that the error was not harmless, we affirm. We remand the
 case with instructions to return it to the trial court for
 further proceedings consistent with this opinion.

 I.
Facts and Procedural History

 ¶10
 Segura and two others carried out an armed home invasion
 robbery. The prosecution later charged her with multiple
 crimes. Following a jury trial, she was convicted of two
 counts of second degree kidnapping and one count of
 aggravated robbery. The court then sentenced her to 111 years
 in prison.

 ¶11
 Segura appealed, but a division of the court of appeals
 affirmed her conviction and sentence, and our court
 thereafter denied her petition for certiorari. After the
 mandate issued, Segura timely filed a Crim. P. 35(b) motion
 asking the trial court to reconsider her sentence. The trial
 court did so and reduced her sentence to seventy-three years.

 ¶12
 From prison, Segura later filed a pro se Crim. P. 35(c)
postconviction motion. She advanced various claims of
 ineffective assistance of trial counsel and requested the
 appointment of postconviction counsel. In a separate
 pleading, Segura reiterated her request for the appointment
 of postconviction counsel.

 ¶13
 Upon its initial review of Segura's Crim. P. 35(c)
 motion, the trial court denied ten of her eleven claims. The
 sole surviving claim dealt with trial counsel's alleged
 ineffective assistance in plea negotiations. As to that
 claim, the court granted Segura's request for
 postconviction counsel. Consequently, it forwarded a copy of
 the motion to both the prosecution and the OPD. But the court
 was clear: The OPD was "appointed" only on the
 remaining claim.

 ¶14
 Because the OPD had a conflict of interest, an attorney with
 the OADC entered her appearance on Segura's behalf with
 respect to the single claim on which the court appointed
 counsel. Thereafter, consistent with the court's
 restriction on the scope of her representation,
 postconviction counsel submitted a supplemental Crim. P.
 35(c) motion focusing exclusively on the ineffective
 assistance claim grounded in the parties' plea
 negotiations. The supplemental motion contended that: (1)
 trial counsel had failed to convey to Segura the plea offers
 and the deadlines to accept them; and (2) to the extent that
 trial counsel had shared all pertinent information about the
 plea offers, Segura did not understand the penalties she was
 facing or the full benefit of those offers.

 ¶15
 After the supplemental motion was fully briefed, the court
 held an evidentiary hearing limited in scope to the
 ineffective assistance claim related to plea negotiations. At
 the end of the hearing, the court took the matter under
 advisement. In a subsequent written order, the court denied
 Segura's request for

 postconviction relief, concluding that her trial counsel had
 not been ineffective in discussing the plea offers with her
 or in explaining the possible penalties with respect to the
 charges brought against her.[4]

 ¶16
 Segura appealed, arguing, as relevant here, that the trial
 court erred by limiting postconviction counsel's
 representation and denying most of the claims without a
 hearing. The division affirmed in part and reversed in part.
People v. Segura, No. 20CA1785, ¶ 1 (Sept. 15,
 2022). It affirmed the portion of the trial court's order
 denying Segura's claim that her trial counsel had been
 ineffective in handling plea negotiations. Id. at
 ¶ 40. But it reversed the remainder of the order,
 concluding that the trial court had violated Crim. P.
 35(c)(3)(IV)-(V) and improperly restricted postconviction
 counsel's representation. Id. at ¶¶
 16, 40. Thereafter, the prosecution sought our intervention,
 and we accepted its petition for writ of certiorari.

 ¶17
 Before turning our attention to the certiorari issue, we
 address the prosecution's preservation contention and
 articulate the standard that guides our review.

 II.
Preservation and Standard of Review

 ¶18
The prosecution maintains that the issue we confront was
 forfeited by Segura and is thus subject to plain error
 review. According to the prosecution, Segura failed to
 preserve the issue because she didn't object to the trial
 court's restriction on the scope of postconviction
 counsel's representation. We note that the prosecution
 took a run at convincing the division of the same contention.
It didn't succeed. And it doesn't succeed here
 either, albeit for a different reason.

 ¶19
 The division ruled that Segura's request for the
 appointment of postconviction counsel sufficed to preserve
 her assertion that the trial court erred in sidelining
 counsel's representation on all but one claim.
Segura, ¶ 22. Thus, the division rejected the
 prosecution's forfeiture claim. Accordingly, it reviewed
 de novo the trial court's reading of paragraphs (IV) and
 (V) and, having found error, it employed the harmless error
 standard of reversal. Id. at ¶¶ 22-23.

 ¶20
 Because the prosecution chose not to ask us to review the
 division's determination vis-a-vis preservation, that
 issue is not properly before us. See Berge v. Berge,
 536 P.2d 1135, 1136 (Colo. 1975) (declining to consider an
 issue not raised in the petition for writ of certiorari);
Jagged Peak Energy Inc. v. Okla. Police Pension &Ret.
 Sys., 2022 CO 54, ¶ 63, 523 P.3d 438, 453 (same).

Therefore, we assume without deciding that Segura properly
 preserved the issue for review.[5]

 ¶21
We review the lower courts' construction of paragraphs
 (IV) and (V) de novo. Hunsaker v. People, 2021 CO
 83, ¶ 16, 500 P.3d 1110, 1114 (stating that our court
 enjoys "plenary authority to promulgate and interpret
 the rules of criminal procedure," and that we review de
 novo the construction of those rules, using the same canons
 available for the interpretation of statutes (quoting
People v. Bueno, 2018 CO 4, ¶ 18, 409 P.3d 320,
 325)). As we do with a statute, we first read the language of
 a rule "consistent with its plain and ordinary meaning,
 and, if it is unambiguous, we apply the rule as
 written." People v. Steen, 2014 CO 9, ¶
 10, 318 P.3d 487, 490. To determine whether a lower
 court's error in interpreting Crim. P. 35(c) warrants
 reversal, we inquire whether the error was harmless.
People v. Davis, 2012 COA 14, ¶ 13, 272 P.3d
 1167, 1170 (applying the harmless error

 standard of reversal to the district court's failure to
 comply with the procedural requirements of Crim. P.
 35(c)(3)(V)).

 III.
Analysis

 ¶22
 As its title suggests, Crim. P. 35 provides
 "[p]ostconviction [r]emedies" a defendant may seek
 in a criminal case. Section (a) addresses requests to correct
 illegal sentences; section (b) deals with motions for the
 reduction of sentences; and section (c), the section
 pertinent here, discusses "[o]ther [r]emedies."
Section (c)(3) states that a defendant who has been aggrieved
 and is asserting "either a right to be released or to
 have a judgment of conviction set aside on one or more of the
 grounds enumerated in section (c)(2) . . . may file a motion
 . . . to vacate, set aside, or correct the sentence."
The parties agree, as do we, that Segura's argument that
 she's entitled to have her judgment of conviction set
 aside is grounded in claims that come within the purview of
 section (c)(2).

 ¶23
 Where the parties part ways is in the interpretation of the
 procedures that govern the filing and resolution of pro se
 Crim. P. 35(c) motions containing a request for
 postconviction counsel. Paragraphs (I) through (IX) of
 section (c)(3) set forth those procedures, which include the
 following:

(IV) The court shall promptly review all motions that
 substantially comply with Form 4, Petition for Postconviction
 Relief Pursuant to Crim. P. 35(c).... If the motion and the
 files and record of the case show to the satisfaction of the
 court that the defendant is not entitled to relief, the court
 shall enter written findings of fact and conclusions of law
 in denying the motion....

(V) If the court does not deny the motion under (IV) above,
 the court shall cause a complete copy of said motion to be
 served on the prosecuting attorney if one has not yet been
 served by counsel for the defendant. If the defendant has
 requested counsel be appointed in the motion, the court shall
 cause a complete copy of said motion to be served on the
 Public Defender. Within 49 days, the Public Defender shall
 respond as to whether the Public Defender's Office
 intends to enter on behalf of the defendant pursuant to
 § 21-1-104(1)(b), 6 C.R.S. In such response, the Public
 Defender shall identify whether any conflict exists, request
 any additional time needed to investigate, and add any claims
 the Public Defender finds to have arguable merit. Upon
 receipt of the response of the Public Defender, or
 immediately if no counsel was requested by the defendant or
 if the defendant already has counsel, the court shall direct
 the prosecution to respond to the defendant's claims or
 request additional time to respond within 35 days and the
 defendant to reply to the prosecution's response within
 21 days. The prosecution has no duty to respond until so
 directed by the court. Thereafter, the court shall grant a
 prompt hearing on the motion unless, based on the pleadings,
 the court finds that it is appropriate to enter a ruling
 containing written findings of fact and conclusions of law.
At the hearing, the court shall take whatever evidence is
 necessary for the disposition of the motion.

Crim. P. 35(c)(3).

 ¶24
The prosecution contends that, upon initial review of a pro
 se Crim. P. 35(c) motion requesting postconviction counsel, a
 trial court has the authority under paragraph (IV) to deny
 any claim that lacks arguable merit and to then proceed under
 paragraph (V) with respect to any claim that is arguably
 meritorious. But the plain and ordinary meaning of the
 rule's language saps the prosecution's argument.

 ¶25
 Paragraph (IV) addresses situations in which review of the
 motion, the record, and the file satisfies the trial court
 that the defendant is not entitled to any

 relief -i.e., that none of the claims advanced has arguable
 merit.[6] It directs the trial court to deny such a
 motion without further action through written findings of
 fact and conclusions of law. Paragraph (V), in turn, applies
 "[i]f the court does not deny the motion under
 (IV)." Crim. P. 35(c)(3)(V). In other words, paragraph
 (V) is triggered if paragraph (IV) is inapplicable because
 the court concludes that at least one claim in the
 defendant's motion has arguable merit. And under
 paragraph (V), if the motion contains a request for counsel,
 "the court shall cause a complete copy of said
 motion to be served on the [OPD]." Id.
(emphasis added).

 ¶26
 Thus, upon its initial review of a Crim. P. 35(c) motion
 containing a request for postconviction counsel, the court
 must either deny the motion and thus all of the claims, or
 not deny the motion and thus none of the claims -there is no
 halfway option. And if the court denies all of the claims, it
 must enter written findings of fact and conclusions of law
 without taking further action. But if the court denies none
 of the claims, it must grant the request for postconviction
 counsel and forward a complete copy of the motion to the
 prosecution and the

 OPD. The OPD must then decide which claims (if any) lack
 arguable merit and should be abandoned, which arguably
 meritorious claims (if any) should be supplemented, and which
 new claims (if any) have arguable merit and should be
 added.[7] The parties must thereafter brief any
 arguably meritorious claims, including those supplemented and
 added.[8]

 ¶27
 Perhaps recognizing that the plain and ordinary meaning of
 the rule's language (adopting an all-or-nothing approach)
 is not its friend, the prosecution asks us to focus on
 "the rule's overall scheme." According to the
 prosecution, the rule is silent on the scope of a trial
 court's authority with respect to motions that include
 both arguably meritorious claims and claims lacking arguable
 merit. Contrary to the prosecution's position, however,
 there is no gap in the rule for us to bridge. Any hybrid
 motion containing both arguably meritorious claims and claims
 that lack arguable merit is a motion a court may not deny
 under paragraph

(IV). Instead, such a motion is governed by paragraph (V),
 which addresses motions that contain at least one claim with
 arguable merit.

 ¶28
The prosecution insists, though, that it is illogical for a
 trial court to lose the authority to deny a claim lacking
 arguable merit under paragraph (IV) simply because the motion
 also includes a claim that has arguable merit. Be that as it
 may, our role here is to interpret and apply the rule as
 written, not to consider whether logic warrants a revision.

 ¶29
 In any event, we disagree that our view of the rule's
 scheme is illogical. If a trial court concludes that a
 request for postconviction counsel in a Crim. P. 35(c) motion
 must be granted because the motion contains at least one
 claim with arguable merit, why is it illogical to forward the
 entire motion to the OPD for its review of all the claims?
The OPD can then take a closer look at the motion and
 determine which claims (if any) to abandon, supplement, and
 add. In this regard, we're mindful that defense counsel
 typically has access to more information than the court in a
 criminal case. Of course, whether this is the ideal approach
 is debatable-reasonable minds may differ on the optimal
 procedure-but it is certainly not illogical.

 ¶30
We are equally unmoved by the prosecution's argument that
 our interpretation of paragraphs (IV) and (V) will lead to
 inefficiency and waste of judicial resources because it will
 require a trial court to proceed "with all the
 claims

 raised in a pro se motion even if it finds . . . that only
 one claim has arguable merit." Again, this
 argument goes to the wisdom of the rule, so this is the wrong
 forum in which to raise it. At any rate, the time it takes a
 trial court to conduct its initial review of a relevant
 motion may actually be reduced under the
 interpretation we embrace here. Take this case for example.
Once the trial court concluded that Segura's motion set
 forth at least one claim with arguable merit, there was no
 need to review the remaining claims.

 ¶31
 True, it's possible that after postconviction
 counsel's review, there may be more claims to litigate,
 which would likely increase the time it takes to resolve the
 motion. But those will all necessarily be claims that
 postconviction counsel represents have arguable merit. Should
 we sacrifice such claims in a criminal case based on concerns
 over judicial economy and limited resources? We think not.

 ¶32
 Lastly, the prosecution seeks refuge in the limited nature of
 the statutory right to postconviction counsel. It urges us to
 declare that its proposed approach is consistent with the
 principle in Colorado jurisprudence that the statutory right
 to postconviction counsel is limited. But the
 prosecution's effort flounders because the limited nature
 of the statutory right to postconviction counsel is in
 lockstep with the plain and ordinary meaning of the language
 of paragraphs (IV) and (V).

 ¶33
 The statutory right to postconviction counsel is
 "tenuously premised on an interpretation of the statutes
 creating and governing the [OPD] and requiring that

 office to prosecute post-conviction remedies which have
 arguable merit." Silva v. People, 156 P.3d
 1164, 1168 (Colo. 2007) (quoting with approval People v.
 Hickey, 914 P.2d 377, 378 (Colo.App.
1995)).[9] In Silva, we noted that section
21-1-104(1)(b), C.R.S. (2024), requires the OPD to
 "[p]rosecute any appeals or other remedies . .
 . after conviction that the [OPD] considers to be in the
 interest of justice." Silva, 156 P.3d at 1168
(first alteration in original) (emphasis added). Continuing,
 we said that decades earlier a division of the court of
 appeals had read the "other remedies" statutory
 language as including arguably meritorious Crim. P. 35(c)
 motions. Id. (referring to the division's
 decision in People v. Duran, 757 P.2d 1096, 1097
(Colo.App. 1988)). We adopted the same reading because we
 inferred that it had been ratified by our General Assembly.
Silva, 156 P.3d at 1168.

 ¶34
 Thus, as the prosecution points out, our court in
 Silva didn't interpret "other
 remedies" in section 21-1-104(1)(b) as encompassing all
 Crim. P. 35(c) motions. Id. Rather, we recognized
 that the statutory right to postconviction counsel extends
 only to Crim. P. 35(c) motions that are arguably
 meritorious. Id. More specifically, we
 determined that a defendant has no right to the appointment
 of postconviction counsel in conjunction with a Crim. P.
 35(c) motion if (1) the trial court concludes that the motion
 is "wholly unfounded," or (2) the OPD concludes
 that the Crim. P. 35(c)

 motion lacks arguable merit. Id.; see also
§ 21-1-104(2) ("In no case, however, shall the
 state public defender be required to prosecute any appeal or
 other remedy unless the state public defender is satisfied
 first that there is arguable merit to the proceeding.");
People v. Breaman, 939 P.2d 1348, 1351 (Colo. 1997)
("A court-appointed public defender does not have a duty
 to prosecute a claim for post-conviction relief after
 determining that there is no arguable merit to the
 defendant's claim."); Colo. RPC 3.1 ("A lawyer
 shall not bring or defend a proceeding, or assert or
 controvert an issue therein, unless there is a basis in law
 and fact for doing so that is not frivolous ...."). In
 other words, the court and the OPD both "must find that
 a defendant's Crim. P. 35(c) motion has arguable merit
 before the statutory right to postconviction counsel is
 triggered." Silva, 156 P.3d at 1168.

 ¶35
 These limitations, however, are entirely consistent with our
 construction of paragraphs (IV) and (V). If the trial court
 finds that a pro se Crim. P. 35(c) motion is wholly unfounded
 (i.e., that all of the claims in the motion lack arguable
 merit), it must deny the relief requested without further
 action by issuing written findings of fact and conclusions of
 law. Crim. P. 35(c)(3)(IV). But if the trial court finds that
 a pro se Crim. P. 35(c) motion is not wholly unfounded (i.e.,
 that at least one claim in the motion has arguable merit), it
 must appoint the OPD and forward a complete copy of the
 motion to that office and the prosecution. Crim.

 P. 35(c)(3)(V). The OPD must then determine which claims (if
 any) lack arguable merit and should be abandoned, which
 arguably meritorious claims (if any) should be supplemented,
 and which new claims (if any) have arguable merit and should
 be added.[10]

 ¶36
 In short, nothing about the limited nature of the statutory
 right to postconviction counsel dissuades us from our
 interpretation of paragraphs (IV) and (V). Where, as here,
 the language of a rule of criminal procedure is unambiguous,
 we are duty bound to effectuate its plain and ordinary
 meaning. Steen, ¶ 10, 318 P.3d at 490.

 ¶37
 This is not to say that the clock has struck midnight on any
 alternative procedures for handling pro se Crim. P. 35(c)
 motions. We reiterate that we pass no judgment on the
 sagacity of paragraphs (IV) and (V). Our job today is simply
 to interpret and apply those paragraphs as they are currently
 written. That's just what we've done.

 IV.
Conclusion

 ¶38
 For the foregoing reasons, we conclude that the division
 correctly determined that the trial court violated the
 procedures set out in Crim. P.
 35(c)(3)(IV)-(V).[11] And because the prosecution does not
 challenge the division's determination that this error
 was not harmless, we affirm.

 ¶39
We thus remand the matter to the division with instructions
 to return it to the trial court for further proceedings
 consistent with this opinion. When the trial court receives
 the case again, it need not deal with the ineffective
 assistance claim related to the parties' plea
 negotiations, as that claim has been fully adjudicated. But
 the trial court must permit postconviction counsel to review
 the ten remaining ineffective assistance claims.
Postconviction counsel must then determine which claims (if
 any) lack merit and should be abandoned, which arguably
 meritorious claims (if any) should be supplemented, and which
 new claims (if any) have arguable merit and should be added.
If counsel decides to move forward with any claims, they must
 be briefed, and once fully briefed, the court must decide
 whether to hold a hearing before resolving them.

---------

[1] There is also a statute that addresses
 postconviction remedies. See § 18-1-410, C.R.S.
(2024). In this case, however, we are concerned only with
 Crim. P. 35.

[2] We infer that the references to the
 OPD in Crim. P. 35(c)(3)(IV)-(V) include the OADC when the
 OPD has a conflict of interest. See §
 21-2-101(1), C.R.S. (2024) ("[T]he alternate defense
 counsel shall provide legal representation in circumstances
 in which the state public defender has a conflict of interest
 in providing legal representation."). For brevity's
 sake, when we discuss Crim. P. 35(c)(3) in general terms in
 this opinion, we simply refer to the OPD.

[3] The prosecution raised, and we agreed
 to review, the following issue:

1. Whether a postconviction court violates Crim. P.
 35(c)(3)(IV) and (V) by summarily denying some of the claims
 raised in a pro se motion and limiting the scope of appointed
 counsel's representation to claims that survive summary
 denial.

[4] The court also found that trial
 counsel had not been ineffective in failing to communicate to
 Segura any plea offer sufficiently in advance of the
 offer's expiration deadline. Although Segura raised this
 specific claim for the first time at the hearing, we do not
 address its untimeliness here because it doesn't affect
 our analysis.

[5] We recognize that in People v.
 Tallent, 2021 CO 68, ¶ 11, 495 P.3d 944, 948, we
 said that "an appellate court has an independent,
 affirmative duty to determine whether a claim is preserved
 and what standard of review should apply, regardless of the
 positions taken by the parties." But context matters. In
 Tallent, we had to determine whether we were bound
 by the parties' agreement and the division's
 assumption that an issue was preserved. We refused to have
 our hands tied by the parties or the division. Here, by
 contrast, there is no agreement on whether Segura preserved
 her claim, and the division explicitly rejected the
 prosecution's contention that she failed to do so. Yet,
 the prosecution elected not to include the preservation issue
 in its petition for writ of certiorari. Having made its bed,
 the prosecution must lie in it.

[6] In conducting this initial review, the
 trial court should consider, among other things, whether the
 motion: is timely; fails to state adequate factual or legal
 grounds for relief; states legal grounds for relief that lack
 merit; states factual grounds that, even if true, don't
 entitle the defendant to relief; and states factual
 allegations that, if true, entitle the defendant to relief,
 but the files and records of the case satisfy the court that
 those allegations are untrue. Crim. P. 35(c)(3)(IV).

[7] Paragraph (V) requires the OPD to
 indicate whether it needs additional time to investigate. We
 infer from this language that the OPD may supplement any
 arguably meritorious claims advanced by the
 defendant.

[8] The division read Crim. P.
 35(c)(3)(IV)-(V) as requiring an evidentiary hearing whenever
 a trial court concludes during its initial review of a pro se
 motion that at least one claim has merit and that a request
 for postconviction counsel should thus be granted. See
Segura, ¶¶ 11-12, 16. This is incorrect. Even
 if, upon an initial review, the court declines to deny such a
 motion outright, it may subsequently resolve the motion
 without a hearing after any arguably meritorious claims
 pursued by postconviction counsel have been fully briefed.
See Crim. P. 35(c)(3)(V).

[9] The statutes creating and governing
 the OPD are §§ 21-1-103 and 21-1-104, C.R.S.
(2024).

[10] We realize that under our analysis,
 the OPD could be appointed as postconviction counsel on a
 claim that the OPD later concludes lacks arguable merit and
 should be abandoned. But this is inevitable under any system.
The OPD's appointment is necessary at the front end to
 allow it to review any motions that the trial court has
 determined are not wholly unfounded. The same result would
 obtain under the prosecution's approach: The OPD could be
 appointed to pursue a claim that the trial court finds has
 arguable merit, but the OPD might subsequently conclude that
 the claim lacks arguable merit after all and should be
 abandoned.

[11] To the extent that People v.
 Terry, 2019 COA 9, 488 P.3d 459, and other decisions
 from the court of appeals are inconsistent with this opinion,
 they are hereby overruled.

---------