1
 2026 CO 45 In Re The People of the State of Colorado, Plaintiff: v. Clemente Roberts. Defendant No. 25SA362Supreme Court of Colorado, En BancJune 15, 20262
 
          
 Original Proceeding Pursuant to C.A.R. 21 District Court,
 City and County of Denver, Case No. 18CR20011 Honorable Alex
 C. Myers, Judge
 
 
          
 Attorneys for Plaintiff: John Walsh, District Attorney,
 Second Judicial District Johanna G. Coats, Senior Deputy
 District Attorney Denver, Colorado
 
 
          
 Attorneys for Defendant: The Noble Law Firm, LLC Antony Noble
 Tara Jorfald Kayla Armbrust Lakewood, Colorado
 
 3
 
          
 JUSTICE BOATRIGHT delivered the Opinion of the Court, in
 which CHIEF JUSTICE MÁRQUEZ, JUSTICE HOOD, JUSTICE
 GABRIEL, JUSTICE BERKENKOTTER, and JUSTICE BLANCO joined.
 JUSTICE SAMOUR concurred in the judgment.
 
 
          Order
 Made Absolute
 
 
          
 OPINION
 
 
          
 BOATRIGHT JUSTICE
 
 4
 
          ¶1
 In this original proceeding, the People challenge a district
 court order appointing counsel to potentially supplement
 Clemente Roberts's motion for postconviction relief under
 Crim. P. 35(c) ("35(c) motion") after his private
 attorney filed the motion and then withdrew from the case.
 
 
          ¶2
 We hold that because Roberts's private attorney filed the
 35(c) motion on his behalf, Roberts "already ha[d]
 counsel" under Crim. P. 35(c)(3)(V), meaning he was not
 entitled to have the public defender or other court-appointed
 counsel supplement the motion.[1] Accordingly, we make our order to
 show cause absolute and remand the case to the district court
 for an order directing the People to respond to Roberts's
 35(c) motion.
 
 
          I.
 Facts and Procedural History
 
 
          ¶3
 Roberts pleaded guilty to second degree murder, and the
 district court sentenced him to thirty-eight years in prison.
 Through his private attorney, Roberts timely filed a 35(c)
 motion, alleging ineffective assistance of counsel.
 
 5
 
          ¶4
 Simultaneously, Roberts's attorney filed a motion to
 withdraw from the case, explaining that the engagement
 agreement with Roberts limited the scope of representation to
 filing the 35(c) motion and requesting service of it on the
 public defender. In the motion to withdraw, Roberts's
 attorney asserted that if the postconviction court did not
 summarily deny the 35(c) motion under Crim. P. 35(c)(3)(IV),
 it should serve the motion on the public defender pursuant to
 Crim. P. 35(c)(3)(V).
 
 
          ¶5
 The court found that summary denial would be inappropriate;
 accordingly, it served a copy of the 35(c) motion on the
 public defender after granting Roberts's attorney's
 motion to withdraw. Tracking the language of Crim. P.
 35(c)(3)(V), the court instructed the public defender to
 identify any potential conflict, request any time needed to
 investigate, and "add any claims the Public Defender
 finds to have arguable merit" to the 35(c) motion.
 
 
          ¶6
 The People filed a motion to reconsider. They argued that
 because Roberts's private counsel had prepared the 35(c)
 motion, the court's appointment of the public defender
 violated Crim. P. 35(c)(3)(V), which contemplates appointment
 of counsel to supplement claims only if a defendant is not
 already represented. They contended that the logic of the
 rule is to give meritorious pro se defendants an
 opportunity for professional supplementation, not a chance
 for a second set of claims. They thus asked that the court
 appoint new counsel only for purposes of
 
 6
 
 a reply brief and any future hearings—not to supplement
 the 35(c) motion with additional claims.
 
 
          ¶7
 The court denied the People's motion to reconsider,
 reasoning that Roberts became unrepresented when his private
 attorney withdrew, and his request for counsel
 "trigger[ed]" service of the 35(c) motion on the
 public defender for supplementation. The court also rejected
 the People's argument that this course of action was
 contrary to the logic of Crim. P. 35(c)(3)(V), stating that
 "the rule does not include any express prohibition
 limiting supplementation once counsel is appointed."
 Finally, the court thought it "problematic" to
 control appointed counsel's independent judgment
 regarding whether to supplement the 35(c) motion or maintain
 the issues and arguments already raised by prior counsel.
 
 
          ¶8
 Subsequently, the 35(c) motion was served on the public
 defender, who determined that Roberts qualified for
 court-appointed representation. The public defender's
 office accepted appointment, but upon finding that it had a
 conflict of interest, moved to withdraw and asked the court
 to appoint alternate defense counsel. The court granted the
 motion, and Roberts's former private attorney reentered
 their appearance as alternate defense counsel.
 
 
          ¶9
 The People sought relief under C.A.R. 21, and we issued an
 order to show cause.
 
 7
 
          II.
 Analysis
 
 
          ¶10
 We begin by establishing our jurisdiction under C.A.R. 21 and
 our standard of review, noting that, despite any implication
 of mootness, we decide this case on the merits because it is
 capable of repetition yet evading review. Next, we lay out
 the principles of statutory interpretation and apply them to
 interpret Crim. P. 35(c)(3)(V) as a whole and its specific
 clause, "if the defendant already has counsel." We
 hold that because Roberts's private attorney filed the
 35(c) motion on his behalf, Roberts "already ha[d]
 counsel" under Crim. P. 35(c)(3)(V), meaning he was not
 entitled to have the public defender or other court-appointed
 counsel supplement the motion.
 
 
          A.
 Jurisdiction and Standard of Review
 
 
          ¶11
 Under C.A.R. 21, the exercise of our jurisdiction is wholly
 within our discretion. People v. Tafoya, 2019 CO 13,
 ¶ 13, 434 P.3d 1193, 1195. Relief under C.A.R. 21 is
 extraordinary and limited in purpose and availability.
 Id. In exercising our C.A.R. 21 jurisdiction, we may
 consider "the nature of the rights implicated and the
 potential irreparable harm," Ortega v. Colo.
 Permanente Med. Grp., P.C., 265 P.3d 444, 447 (Colo.
 2011), or whether "a petition raises 'issues of
 significant public importance that we have not yet
 considered,'" People v. Kilgore, 2020 CO 6,
 ¶ 8, 455 P.3d 746, 748 (quoting Wesp v.
 Everson, 33 P.3d 191, 194 (Colo. 2001)).
 
 8
 
          ¶12
 The People seek review of an order implicating Roberts's
 right to have counsel supplement his 35(c) motion to ensure
 that the motion survives summary denial. The exercise of our
 jurisdiction is sufficiently warranted by the importance of
 protecting Roberts's right to postconviction counsel and
 guiding postconviction courts on the proper process under
 Crim. P. 35(c)(3)(V).
 
 
          ¶13
 Moreover, we generally exercise jurisdiction and issue relief
 for "a live case or controversy," not for a moot
 case. Davidson v. Comm. for Gail Schoettler, Inc.,
 24 P.3d 621, 623 (Colo. 2001). Roberts implies that this case
 is moot because he does not object to the relief
 sought—serving the 35(c) motion directly on the People.
 But mootness does not bar our review when the case is capable
 of repetition yet evading review. E.g., Diehl v.
 Weiser, 2019 CO 70, ¶ 10, 444 P.3d 313, 316. In
 light of several cases which have presented a similar issue,
 we deem this case capable of repetition yet evading
 review,[2] so we proceed to decide it on the merits.
 
 9
 
          ¶14
 "We review questions of statutory interpretation de
 novo," People v. Cali, 2020 CO 20, ¶ 14,
 459 P.3d 516, 519, and we likewise apply de novo review to
 interpretations of the rules of criminal procedure,
 People v. Segura, 2024 CO 70, ¶ 21, 558 P.3d
 234, 239. Because the district court denied the People's
 motion to reconsider based on its interpretation of Crim. P.
 35(c)(3)(V), our review here is de novo.
 
 
          B.
 Meaning of Crim. P. 35(c)(3)(V)
 
 
          ¶15
 When interpreting rules, we follow the same principle of
 statutory interpretation requiring us to first construe
 unambiguous words plainly, giving them their ordinary
 meaning. Segura, ¶¶ 1, 21, 558 P.3d at
 236, 239. Thus, we apply this canon of statutory
 interpretation to rules of criminal procedure and presume
 that a rule "says . . . what it means and means . . .
 what it says." People v. Weeks, 2021 CO 75,
 ¶ 25, 498 P.3d 142, 151 (quoting Conn. Nat'l
 Bank v. Germain, 503 U.S. 249, 253-54 (1992)); see
 also Segura, ¶ 21, 558 P.3d at 239 ("[W]e
 apply the rule as written." (quoting People v.
 Steen, 2014 CO 9, ¶ 10, 318 P.3d 487, 490)). Even
 so, the words of a rule are not construed in vacuum; we
 interpret the rule "as a whole, giving consistent,
 harmonious and sensible effect to all of its parts."
 Pineda-Liberato v. People, 2017 CO 95, ¶ 22,
 403 P.3d 160, 164 (stating this principle
 
 10
 
 in the context of statutory interpretation). In so doing, we
 generally avoid interpretations that "lead to illogical
 or absurd results." Id.
 
 
          ¶16
 If a rule is ambiguous, we may look beyond its words to
 extrinsic aids of construction such as the history and
 purpose of the rule. See Weeks, ¶ 27, 498 P.3d
 at 152. In the context of statutory interpretation, this
 exercise would ordinarily involve an examination of the
 legislative history and records and the purpose behind a
 statute's enactment to decipher the legislative intent.
 Carrera v. People, 2019 CO 83, ¶ 10, 449 P.3d
 725, 728. But we have the plenary authority to
 promulgate and interpret the Colorado Rules of Criminal
 Procedure (the "Rules"). Steen, ¶ 10,
 318 P.3d at 490. Thus, our past cases guide us to the
 Rules' intended meaning and purpose, in addition to any
 expressed purpose in the Rules themselves.
 
 
          ¶17
 An ambiguous rule is "reasonably susceptible of multiple
 interpretations." Sentinel Colo. v. Rodriguez,
 2025 CO 58, ¶ 20, 577 P.3d 48, 53 (quoting Elder v.
 Williams, 2020 CO 88, ¶ 18, 477 P.3d 694, 698).
 Likewise, ambiguity exists if parties offer "contrasting
 interpretations [which] are both reasonable."
 Carrera, ¶ 15, 449 P.3d at 729.
 
 
          ¶18
 To begin, Crim. P. 35(c)(3)(IV) directs a court to summarily
 review a 35(c) motion for adequate factual or legal grounds
 supporting the relief sought. If the motion survives summary
 denial, the court proceeds to apply Crim. P. 35(c)(3)(V).
 
 11
 
          This
 rule guides the court on how to proceed if the defendant is
 unrepresented versus if the defendant "already has
 counsel." If the defendant is unrepresented and requests
 counsel, the court must serve the motion on the public
 defender; on the other hand, if the defendant already has
 counsel, the court must serve the attorney-filed motion
 directly on the prosecution:
 
 
 If the court does not deny the motion under (IV) above, the
 court shall cause a complete copy of said motion to be served
 on the prosecuting attorney if one has not yet been served by
 counsel for the defendant. If the defendant has requested
 counsel be appointed in the motion, the court shall cause a
 complete copy of said motion to be served on the Public
 Defender. Within [forty-nine] days, the Public Defender
 shall respond as to whether the Public Defender's Office
 intends to enter on behalf of the defendant .... In such
 response, the Public Defender shall identify whether any
 conflict exists, request any additional time needed to
 investigate, and add any claims the Public Defender finds
 to have arguable merit. Upon receipt of the response of
 the Public Defender, or immediately if no counsel was
 requested by the defendant or if the defendant already
 has counsel, the court shall direct the prosecution to
 respond to the defendant's claims or request
 additional time to respond ....
 
 
 Crim. P. 35(c)(3)(V) (emphases added).
 
 
          ¶19
 The issue here implicates two ostensibly contradictory
 clauses in crim. P. 35(c)(3)(V). First, the rule provides
 that "[i]f the defendant has requested
 counsel be appointed in the motion, the court shall
 cause a complete copy of said motion to the served on the
 Public Defender." Id. (emphases added). This
 suggests, as the district court stated, and as Roberts
 argues, that a defendant's request for court-appointed
 counsel immediately "trigger[s]" appointment and
 
 12
 
 "service on the Public Defender" for potential
 supplementation, regardless of whether the defendant was a
 pro se defendant throughout or became one after
 "ha[ving] counsel" file the motion. But second, the
 rule states that "[u]pon receipt of the response of the
 Public Defender, or immediately if no counsel was requested
 by the defendant or if the defendant already has counsel,
 the court shall direct the prosecution to respond."
 Id. (emphasis added). This implies that when a
 represented defendant files a 35(c) motion that is not
 summarily denied, the court should direct the prosecution to
 respond immediately—without appointing a public
 defender let alone giving them an opportunity to supplement
 the motion—even if the represented defendant requests
 court-appointed counsel.
 
 
          ¶20
 Both interpretations are reasonable. And Crim. P. 35(c)(3)(V)
 leaves some uncertainty about the proper course of action
 when a defendant like Roberts requests court-appointed
 counsel but already had private counsel file his 35(c)
 motion. Accordingly, Crim. P. 35(c)(3)(V) is ambiguous, and
 we turn to extrinsic aids of interpretation—namely, the
 purpose and context underlying the rule.
 
 
          ¶21
 The overall purpose and construction of the Rules are spelled
 out in Crim. P. 2: "These Rules are intended to provide
 for the just determination of criminal proceedings. They
 shall be construed to secure simplicity in procedure,
 fairness in administration, and the elimination of
 unjustifiable expense and delay." (Emphasis added.)
 In tandem with Crim. P. 2, we have had both procedural
 
 13
 
 fairness and judicial economy in mind when interpreting a
 defendant's right to postconviction counsel and relief
 under the Rules. See People v. Hampton, 528 P.2d
 1311, 1312 (Colo. 1974). In Hampton, we observed
 that postconviction proceedings in Colorado are aimed at
 preventing injustices arising from conviction or sentencing,
 rather than providing "a perpetual right of review"
 to a defendant. Id. The postconviction court is also
 afforded "one opportunity to reconsider" the
 sentence "in timely fashion" while remaining
 cognizant of the finality of conviction and sentencing.
 People v. Fuqua, 764 P.2d 56, 60 (Colo. 1988).
 Importantly, postconviction proceedings are not intended to
 allow defendants to present their claims in piecemeal and
 successive fashion. See People v. Hubbard, 519 P.2d
 945, 947 (Colo. 1974); Crim. P. 35(c)(3)(VI)-(VIII)
 (requiring the postconviction court to deny any claim that
 was raised in a prior appeal or proceeding, barring certain
 exceptions).
 
 
          ¶22
 The same rationale guides how we construe a defendant's
 right to postconviction counsel in the context of Crim. P.
 35(c)(3)(V). In Colorado, "there exists a
 limited statutory right to post-conviction counsel
 for meritorious Crim. P. 35(c) motions." Silva v.
 People, 156 P.3d 1164, 1168 (Colo. 2007) (emphasis
 added). This right to postconviction counsel stems from the
 long-standing right of indigent persons to representation.
 Id. In fact, in postconviction proceedings,
 including 35(c) motion proceedings, an indigent defendant is
 entitled to the same
 
 14
 
 effective representation as in a substantive suit, to be
 judged under the Strickland standard. Id.
 at 1169; see Strickland v. Washington, 466 U.S. 668,
 687 (1984) ("[T]he proper standard for attorney
 performance is that of reasonably effective
 assistance."). That said, this right is "not
 automatic or unlimited," and "[a] district court is
 not required to appoint counsel for all Crim. P. 35(c)
 motions 'when the asserted claim is wholly
 unfounded.'" Silva, 156 P.3d at 1168
 (quoting Duran v. Price, 868 P.2d 375, 379 (Colo.
 1994)). Both the court and the public defender "must
 find that a defendant's Crim. P. 35(c) motion has
 arguable merit before the statutory right to post-conviction
 counsel is triggered." Id.
 
 
          ¶23
 To effectuate a defendant's right to postconviction
 counsel, Crim. P. 35(c)(3)(V) mandates the court to serve a
 viable 35(c) motion on the public defender if the defendant
 has requested counsel. Upon receipt, the public defender
 "shall respond as to whether [it] intends to
 enter on behalf of the defendant . . . and add any claims
 [it] finds to have arguable merit"—i.e.,
 supplement the motion. Id. (emphases added). Thus,
 although indigent defendants have a limited right to
 postconviction counsel, the public defender retains
 discretion over whether to enter an appearance and, notably,
 whether to pursue any additional claims.
 
 
          ¶24
 Against this background, Crim. P. 35(c)(3)(V) states that
 "[u]pon receipt of the response of the Public Defender,
 or immediately if no counsel was requested
 
 15
 
 by the defendant or if the defendant already has counsel, the
 court shall direct the prosecution to respond."
 (Emphasis added.) It is well established that the word
 "or" is disjunctive. Hobbs v. City of
 Salida, 2025 CO 50, ¶ 19, 576 P.3d 164, 168.
 "[O]r" is deemed "together with the commas
 that set [it] off, as creating a separate series."
 Id. at ¶ 23, 576 P.3d at 169. Interpreting
 "or" this way in crim. P. 35(c)(3)(V), we see that
 the two clauses it separates are mutually exclusive.
 Therefore, Crim. P. 35(c)(3)(V) contemplates the court
 directing the prosecution to respond either (1) after the
 public defender has filed a response, or (2)
 "immediately" when the defendant did not request
 counsel or "already has counsel." That is, "if
 the defendant already has counsel," then the court must
 direct the prosecution to respond immediately.
 
 
          ¶25
 To reiterate, we begin our interpretation of a rule by giving
 its words their plain and ordinary meaning. Segura,
 ¶¶ 1, 21, 558 P.3d at 236, 239. In doing so here,
 however, giving the two competing clauses of the rule their
 plain meanings directs a postconviction court to two
 conflicting, but reasonable, courses of action. Thus, the two
 clauses of Crim. P. 35(c)(3)(V) lend the rule, as a whole, to
 ambiguous meaning. Simply put, it appears that the drafters
 of the rule did not envision an attorney drafting and filing
 a 35(c) motion and then immediately withdrawing. Now we are
 left with ascertaining the drafters' intent by going
 outside the plain words of Crim. P. 35(c)(3)(V). We do so by
 considering the
 
 16
 
 overall purpose of the Rules stated under Crim. P.
 2—ensuring procedural fairness while eliminating
 unjustifiable expense and delay. And we take into account our
 consistent articulation of Crim. P. 35(c)(3)(V)'s
 purpose—protecting the right to postconviction counsel
 while preventing piecemeal representation. As a result of our
 analysis, the intent of the rule becomes evident: the
 defendant should have counsel's help in filing and
 reviewing the 35(c) motion.
 
 
          ¶26
 Roberts emphasized that he retained counsel "for the
 limited purpose of filing a petition for postconviction
 relief" and that his attorney moved to withdraw upon
 such filing, implying that Roberts no longer "ha[d]
 counsel." But it is of no moment whether a represented
 defendant had counsel for a limited purpose or more
 comprehensive representation. Either way, Roberts had counsel
 file the 35(c) motion. That satisfied the purpose of Crim. P.
 35(c)(3)(V), that is, having counsel review the case and
 notify the court of any potential defects on its face. And
 this is why the rule provides that if the defendant availed
 themselves of counsel in filing a 35(c) motion that passes
 summary review, then "the court shall direct the
 prosecution to respond" under Crim. P. 35(c)(3)(V).
 
 
          ¶27
 Accordingly, we hold that because Roberts's private
 attorney filed the 35(c) motion on his behalf, Roberts
 "already ha[d] counsel" under Crim. P. 35(c)(3)(V),
 meaning he was not entitled to have the public defender or
 other court-appointed counsel supplement the motion.
 
 17
 
          III.
 Conclusion
 
 
          ¶28
 For the foregoing reasons, we make our order to show cause
 absolute, and we remand the case to the district court for an
 order directing the People to respond to Roberts's 35(c)
 motion.
 
 
          
 JUSTICE SAMOUR concurred in the judgment.
 
 18
 
          
 JUSTICE SAMOUR, concurring in the judgment only.
 
 
          ¶29
 Interpreting a statute or rule can sometimes feel like an
 Indiana Jones expedition: When an adventurer fixes his gaze
 on a single clue instead of the whole map, danger looms in
 the form of an unseen trap. Today, the majority tumbles into
 such a trap—it spots supposed ambiguity because it
 examines a sentence in isolation rather than considering the
 rule's full design. But it then dispels that purported
 ambiguity by doing nothing more than reading the rule's
 words and phrases together and in context.
 
 
          ¶30
 Because the path is straightforward from the
 start—there is no ambiguity trap—and the majority
 never actually applies the extrinsic interpretive aids it
 says are necessary, I respectfully concur in the judgment
 only. I fully agree with the majority's holding; I part
 ways only with the zig-zagging analytical road the majority
 follows to get there. This matters because today's
 decision could unwittingly distort our statutory- and
 rule-interpretation jurisprudence.
 
 
          ¶31
 Having set the stage, I now turn to the majority's
 reasoning. The majority concludes that the rule, Crim. P.
 35(c)(3)(V), is ambiguous. As it acknowledges, that
 determination requires us to "look beyond its words to
 extrinsic aids of construction such as the history and
 purpose of the rule" to resolve the alleged ambiguity.
 Maj. op. ¶ 16.
 
 19
 
          ¶32
 Tellingly, though, the majority turns to no extrinsic aids
 in resolving the claimed ambiguity. Instead, after
 declaring the rule ambiguous—thus requiring recourse to
 extrinsic aids—the majority resolves the supposed
 ambiguity simply "by giving its words their plain and
 ordinary meaning" and by reading the rule as a whole and
 in context. Id. at ¶ 25.
 
 
          ¶33
 Nowhere does the majority discuss the rule's history or
 explain how the rule's purpose removes the perceived
 ambiguity—nor can it, because there is no ambiguity.
 And to the extent the majority hangs its hat on the
 "context underlying the rule," id. at
 ¶ 20—a notion the majority leaves
 unexplained—that is not an extrinsic aid of statutory
 construction. If the majority means that we must read the
 sentence it believes creates ambiguity in context, it is
 spot-on. But we must always read statutory or rule
 language in context. Cases supporting this proposition are
 plentiful. See, e.g., People v. Sprinkle,
 2021 CO 60, ¶ 22, 489 P.3d 1242, 1246 ("We read
 [statutory] words and phrases in context ....");
 McCulley v. People, 2020 CO 40, ¶ 10, 463 P.3d
 254, 257 ("We read statutory words and phrases in
 context ....") (quoting Doubleday v. People,
 2016 CO 3, ¶ 19, 364 P.3d 193, 196); People v.
 Bonvicini, 2016 CO 11, ¶ 12, 366 P.3d 151, 155
 (noting that in ascertaining and effectuating the
 legislature's intent, "we first look to the plain
 meaning of the statutory language, reading words and phrases
 in context"); People v. Diaz, 2015 CO 28,
 ¶ 12, 347 P.3d 621, 624 ("We construe the statute
 as a whole . . . and we read
 
 20
 
 the words and phrases in context ...."); Snow v.
 People, 2025 CO 32, ¶ 18, 569 P.3d 835, 840
 ("The same principles that apply to statutory
 interpretation apply when we construe our rules of criminal
 procedure ...."). This necessarily includes
 consideration of both "the specific context in which
 that language is used, and the broader context of the statute
 as a whole." People v. Hill, 228 P.3d 171,
 173-74 (Colo.App. 2009) (quoting Robinson v. Shell Oil
 Co., 519 U.S. 337, 341 (1997)).
 
 
          ¶34
 Sensing this gap, the majority attempts to patch it by
 invoking Crim. P. 2—the rules' general purposes
 clause. But that reference is no treasure map. The majority
 fails to explain in any meaningful way how the broad,
 overarching purposes animating the criminal procedural rules
 as a whole aid its resolution of the perceived ambiguity in
 the language of Crim. P. 35(c)(3)(V). In other words, how do
 "procedural fairness" and "judicial
 economy"—concepts the majority plucks from Crim.
 P. 2 and our case law—compel today's decision? More
 specifically, why isn't the defense's reading of the
 rule—that all motions requesting court-appointed
 counsel should be forwarded to the Public Defender—more
 consistent with procedural fairness than the majority's
 interpretation? Isn't affording court-appointed counsel
 to all defendants who clear the Crim. P. 35(c)(3)(IV) hurdle
 more procedurally fair than limiting that protection to only
 some? And shouldn't procedural fairness carry the day
 over judicial economy? Does the majority privately balance
 these competing interests?
 
 21
 
          The
 majority opinion leaves those questions unanswered. Offering
 little more than lip service to the purposes of our rules of
 criminal procedure does not amount to employing extrinsic
 aids of interpretation and cannot rescue the majority from
 the analytical corner into which it has painted itself.
 
 
          ¶35
 The upshot is that Crim. P. 35(c)(3)(V) is not ambiguous.
 Indeed, neither party argued ambiguity in this case; the
 majority ventured down that path all on its own—the
 party presentation principle be damned.[1] It is
 unsurprising, then, that giving the rule's words their
 plain and ordinary meaning—while reading them together
 and in context—suffices to resolve this case. What the
 majority seems to mean is simply that one must read all the
 sentences in the rule together, as a whole and in context.
 But of course that is always true; otherwise, confusion might
 arise—as it does here, from the majority's own
 making.
 
 
          ¶36
 Of particular relevance, if one reads, in isolation, the
 rule's second sentence—i.e., "If the defendant
 has requested counsel be appointed in the motion, the court
 shall cause a complete copy of said motion to be served on
 the Public Defender," Crim. P. 35(c)(3)(V)—one
 might infer that any request by a defendant "for
 court-appointed counsel immediately 'trigger[s]'
 appointment and 'service on
 
 22
 
 the Public Defender' for potential
 supplementation."[2] Maj. op. ¶ 19 (alteration in
 original) (quoting People v. Roberts, No. 18CR20011,
 at 1 (Dist. Ct., City &Cnty. of Denver, Dec. 3, 2025)
 (unpublished order)). In other words, read alone, the second
 sentence could be construed to mean that even where, as here,
 a Crim. P. 35(c) motion is filed through counsel, the court
 must nevertheless forward it to the Public Defender for
 possible supplementation. This is the sentence the majority
 muses on in isolation to find ambiguity.
 
 
          ¶37
 But the rest of the rule provides much needed context. Read
 in context, it becomes clear that the drafters intended the
 second sentence as a general proposition modifying the
 immediately preceding sentence—the first sentence. The
 first sentence states that the court must serve the motion on
 the prosecuting attorney. In the next sentence—the
 second one—the drafters cautioned that if the defendant
 has requested counsel, the motion should instead be
 served on the Public Defender. This sentence has a single,
 straightforward job: to explain that, despite what the first
 sentence instructs, a motion requesting counsel should not be
 routed to the prosecuting attorney; it should instead
 generally be routed to the Public Defender.
 
 23
 
          ¶38
 As relevant here, the fifth sentence supplies the most
 context for the general statement in the second sentence:
 "Upon receipt of the response of the Public Defender, or
 immediately if no counsel was requested by the defendant or
 if the defendant already has counsel, the court shall direct
 the prosecution to respond to the defendant's claims or
 request additional time to respond within [thirty-five]
 days." Crim. P. 35(c)(3)(V). As the majority recognizes,
 the disjunctive "or" in this sentence creates
 "'a separate series'" of "mutually
 exclusive" scenarios. Maj. op. ¶ 24
 (quoting Hobbs v. City of Salida, 2025 CO 50, ¶
 23, 576 P.3d 164, 169). Thus, although the second
 sentence provides that a motion requesting counsel should
 generally be served on the Public Defender rather than the
 prosecuting attorney, the fifth sentence—the more
 specific of the two—makes clear that this does not
 apply when the defendant already has counsel. In that
 circumstance, the motion should be sent to the prosecuting
 attorney, not the Public Defender, in accordance with the
 first sentence's directive.
 
 
          ¶39
 This clarification had to wait until the fifth sentence
 because the third and fourth sentences address what the
 Public Defender must do when—pursuant to the second
 sentence—a motion lands on her desk. But awkward
 drafting does not an ambiguity make.
 
 
          ¶40
 Significantly, after declaring ambiguity based on its
 isolated reading of the second sentence, the majority
 resolves the case not by turning to the rule's history
 
 24
 
 or purpose—much less the broad, overarching purposes of
 all the rules as a whole—but simply by reading that
 sentence in harmony with the rest of Crim. P. 35(c)(3)(V).
 Doing so leads the majority to correctly discern three
 straightforward scenarios (only two of which involve a
 request for counsel): (1) a pro se motion requesting
 court-appointed counsel; (2) a pro se motion without such a
 request; and (3) a motion requesting court-appointed counsel
 filed by private counsel. Id. I agree with the
 majority that only in the first scenario must the court
 forward the motion to the Public Defender. Id. And
 that is precisely the clarification supplied by the fifth
 sentence after the three possible
 scenarios—including a motion requesting court-appointed
 counsel filed by private counsel—have been laid out.
 None of this is complicated, and none of it suggests the
 presence of ambiguity.
 
 
          ¶41
 In the final analysis, although the majority invokes concepts
 from Crim. P. 2 and our jurisprudence—namely,
 "procedural fairness" and "judicial
 economy"—it never explains in any meaningful way
 how those principles support its conclusion that the fifth
 sentence of the rule prevails over the second. If, as the
 majority insists, those two sentences open the door to two
 "conflicting . . . courses of action," Maj. op.
 ¶ 25, what is it about procedural fairness and judicial
 economy that give the fifth sentence the nod over the second
 in the majority's eyes? And is the majority resolving the
 asserted-but-unfounded conflict by effectively relegating the
 second sentence to superfluous status? See People v.
 Trupp, 51 P.3d 985, 988 (Colo. 2002)
 
 25
 
 (noting that we avoid interpretations that render language in
 a rule "redundant or superfluous"). Does the
 majority really believe that the drafters settled on one
 course of action in the second sentence only to contradict
 themselves three sentences later? Instead of grappling with
 these questions, the majority simply announces—without
 analysis—that it resolves the posited conflict "by
 considering the overall purpose of the [r]ules [as a
 whole]" and "tak[ing] into account" our case
 law's discussion of Crim. P. 35(c)(3)(V). Maj. op. ¶
 25.
 
 
          ¶42
 The truth is that the majority reads the second and fifth
 sentences exactly as it should: in harmony with each other
 and with the rest of the rule, thereby resolving any tension
 that may exist. See People v. Ross, 2021 CO 9,
 ¶ 34, 479 P.3d 910, 917 (stating that while two
 statutory provisions were in tension, we recognized we were
 "duty-bound to interpret [them] harmoniously—that
 is, in a manner that gives consistent and sensible effect to
 all their parts and avoids rendering any words or phrases
 meaningless"). That is simply the plain-meaning rule of
 interpretation, which applies whenever a statute or rule is
 unambiguous—and which the majority applies here while
 stubbornly resisting saying so.
 
 
          ¶43
 In the end, the majority properly holds that Clemente Roberts
 was not entitled to have the Public Defender, or other
 court-appointed counsel, supplement his motion because he
 already had counsel when he filed it. Maj. op.
 
 26
 
 ¶ 27. And the majority also correctly determines that
 the fact that Roberts's counsel withdrew as soon as the
 motion was filed is neither here nor there. Id. at
 ¶ 26. As the majority notes, what matters is that he was
 represented when the motion was filed. Id.
 
 
          ¶44
 I have no bone to pick with the outcome; my beef is with the
 rationale. I have not before seen an opinion from this court
 in which we pronounce a statute or rule ambiguous, announce
 that extrinsic interpretive aids are therefore warranted, and
 then proceed to resolve the case simply by reading the
 provision in context and giving its words their plain and
 ordinary meaning—precisely the analysis that renders
 any finding of ambiguity a misfit in the first place. I worry
 that it's only a matter of time before someone cites this
 case either for the proposition that reading a provision in a
 statute or rule in context and in harmony with other
 provisions constitutes an extrinsic aid available only when
 the provision is ambiguous or, equally concerning, for the
 proposition that an ambiguity can be found by reading a
 sentence in isolation.
 
 
          ¶45
 Because I fear today's decision may sow unnecessary
 confusion in our jurisprudence on statutory and rule
 interpretation and may have unintended consequences, I felt
 compelled to say my piece. Having done so, I respectfully
 concur in the judgment only.
 
 
 ---------
 
 
 Notes:
 
 
 [1] Our holding bears no impact on
 Roberts's right to be represented by court-appointed
 counsel for the rest of the 35(c) motion proceedings but only
 concerns the right to court-appointed counsel for the
 supplementation of his claims. Roberts retains the right to a
 public defender or other court-appointed counsel for the
 purposes of a reply brief and any future hearings.
 
 
 [2] The People have cited several district
 court cases in which the defendant's postconviction
 counsel filed a 35(c) motion, withdrew from the case, and
 subsequently, the defendant requested court-appointed
 counsel. See, e.g., People v. Villanueva,
 No. 06CR10408 (Dist. Ct., City & Cnty. of Denver, Sep.
 26, 2023) (unpublished order); People v. Shaffer,
 No. 10CR420 (Dist. Ct., City & Cnty. of Denver) (motion
 filed on Aug. 22, 2023); People v. Adem, No.
 18CR5757 (Dist. Ct., City & Cnty. of Denver, June 23,
 2025) (unpublished order). Moreover, in People v.
 Pellouchoud, No. 24CA144, ¶ 26 (Nov. 20, 2025), a
 division of the court of appeals considered this issue and
 concluded that service on "the public defender is only
 triggered when the defendant has filed the motion pro
 se." Thus, the significant likelihood that this scenario
 will repeat itself sanctions our determination of the
 question presented.
 
 
 [1] Had the defense been on notice of any
 ambiguity to be resolved by considerations of procedural
 fairness and judicial economy, it might have advanced a
 forceful argument that its interpretation carried greater
 merit.
 
 
 [2] Crim. P. 35(c)(3)(V) applies only if
 the court does not deny the motion under Crim. P.
 35(c)(3)(IV). To avoid repetition, I omit this qualifier when
 discussing Crim. P. 35(c)(3)(V) in this opinion.
 
 
 ---------